1    Dean Christopherson (SBN 121723)
    **DAWE & CHRISTOPHERSON LLP**
2    1350 Treat Boulevard, Suite 420
    Walnut Creek, California 94597
3    telephone: (925)256-6677
    facsimile: (925)256-6678
4    email: dac@calaw.com

5    Attorneys for Defendant Wells Fargo Bank, N.A.



FILED
CLERK, U.S. DISTRICT COURT

JUN - 7 2011

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

NO/S

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

**JENNIFER MCCANDLESS,**
**DINESH PERERA,**

           **PLAINTIFFS,**

      **VS.**

**WELLS FARGO BANK, N.A.,**
**FIRST AMERICAN TRUSTEE**
**SERVICING SOLUTIONS LLC, ALL**
**PERSONS UNKNOWN, claiming any**
**legal or equitable right, title, estate, lien,**
**or interest in the property described in**
**the complaint adverse to Plaintiffs' title,**
**or any cloud on Plaintiffs' title thereto;**

           **DEFENDANTS.**

No.

**NOTICE OF REMOVAL**

**CV11-04814** GW (PZx)

       PLEASE TAKE NOTICE that Defendant Wells Fargo Bank, N.A. ("Defendant")

removes this matter from the Superior Court of the State of California in and for the County of

Santa Barbara, Anacapa Division, there pending as Case No. 1374299 (the "State Court Action")

to the above Court pursuant to 28 U.S.C. §1441(b) and 28 U.S.C. §1446. Removal is proper for

the following reasons:

       1.      On May 16, 2011, Plaintiffs Jennifer McCandless and Dinesh Perera ("Plaintiffs")

filed a First Amended Complaint in the State Court Action ("First Amended State Court

Complaint"). A true and correct copy of the First Amended State Court Complaint is attached

hereto as **Exhibit 1**.

       2.      In the First Amended State Court Complaint, Plaintiffs assert – for the first time –

a federal claim against Defendants, specifically, a claim for Violation of the Federal Fair Debt

1   Collection Practice Act, 15 U.S.C. §§1692, et seq. [See First Amended State Court Complaint,

2   Exhibit 1 hereto, 10:2-11:4].

3      3.      Pursuant to 28 U.S.C. §1441(b) and 28 U.S.C. §1331, this Court has original

4   jurisdiction over this matter because the First Amended State Court Complaint, on its face, states

5   federal questions arising under the laws of the United States, as referenced in the preceding

6   paragraph.

7      4.      Pursuant to 28 U.S.C. §1367, this court has supplemental jurisdiction over the

8   remaining unnamed state law claims asserted in the First Amended State Court Complaint.

9      5.      The First Amended State Court Complaint was served on Wells Fargo on May 16,

10   2011. Therefore, this Notice of Removal is timely filed under the provisions of 28 U.S.C.

11   Section 1446(b).

12      6.      Defendant First American Trustee Servicing Solutions, LLC ("First American")

13   has made an appearance in the State Court Action and filed a Joinder to Demurrer of Defendant

14   Wells Fargo Bank, N.A. to Plaintiffs Complaint. On June 6, 2011, the undersigned consulted

15   with counsel for First American, Nicole K. Neff, and she has consented to the removal of this

16   case to the United States District Court.   Based upon such consent, removal is appropriate.

17   Schwarzer, Tashima and Wagstaffe, *California Practice Guide: Federal Civil Procedure Before*

18   *Trial*, "Removal Jurisdiction", §2:905.8, p-. 2D-163 (TRG - 2010).

19      7.      Pursuant to 28 U.S.C. §1446(a), Defendant also attaches hereto copies of the

20   following documents which have been served on Wells Fargo in the above-entitled matter as the

21   exhibits referenced below:

22   ///

23   ///

24   ///

25

26

27

28

Notice of Removal

| Description of Document | Exhibit No. |
|---|---|
| Summons | 2 |
| Complaint to Quiet Title | 3 |
| Civil Case Cover Sheet | 4 |
| Notice of Lis Pendens and Notice of Stay and Adverse Claim | 5 |
| Plaintiff's Opposition and Objection to Non-Monetary Status by Defendant First American | 6 |
| Plaintiff's Notice of Case Management Conference | 7 |
| Defendant First American Trustee Servicing Solutions, LLC's Joinder to Demurrer of Defendant Wells Fargo Bank, N.A. to Plaintiff's Complaint | 8 |

8.     Pursuant to 28 U.S.C. §1445(d), written notice of filing of this Notice of Removal will be served promptly on all parties, and a copy of the Notice of Removal shall be filed promptly with the Superior Court of the County of Santa Barbara.

DAWE & CHRISTOPHERSON LLP

Dated:  June 6, 2011

Dean A. Christopherson
Counsel for Wells Fargo Bank, N.A.

Notice of Removal

3

1   Dinesh Perera
    Jennifer McCandless
2   67 Alameda Padra Serra
    Santa Barbara, California 93103
3   805-448-7961

4   Plaintiff's in Propria Persona

**F I L E D**
SUPERIOR COURT of CALIFORNIA
COUNTY of SANTA BARBARA

**MAY 1 6 2011**

GARY M. BLAIR, Executive Officer
BY _Merilee A. Jay_
Merilee A. Jay, Deputy Clerk

### SUPERIOR COURT OF CALIFORNIA
### COUNTY OF SANTA BARBARA
### ANACAPA DIVISION

Jennifer McCandless

Dinesh Perera

      Plaintiffs,

    vs.

WELLS FARGO BANK N.A.,

FIRST AMERICAN TRUSTEE SERVICING

SOLUTIONS LLC, ALL PERSONS

UNKNOWN, claiming any legal or equitable

right, title, estate, lien, or interest in the

property described in the complaint adverse to

Plaintiffs' title, or any cloud on Plaintiffs' title

thereto;

      Defendants

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.: 1374299

1ˢᵗ AMENDED COMPLAINT TO

  QUITE TITLE

Code of Civil Procedure 760.020(a)

    COMES NOW, Dinesh Perera and Jennifer McCandless, Plaintiffs in the above-captioned matter, untrained in the law, unfamiliar with local rules, not self-represented, not represented by licensed counsel, an individual in the exercise of accountability, asking that this and all future pleadings be "liberally construed" pursuant to the "Kerner Doctrine", Haines v Kerner, 404, US 519; 30 L.Ed 2d 652; 92 S. Ct.594 (1972) and files this COMPLAINT FOR QUITE TITLE of real property against DEFENDANTS as follows:

**Complaint For Quite Title** 1

**Exhibit 1**
**Page 1 of 19**

## JURISDICTION

1. Jurisdiction of this court is invoked pursuant to California Code of Civil Procedure Sections 760.020(a), 526(a). Plaintiffs seeks Preliminary injunction, Permanent injunction, Declaratory relief and Quiet Title to real property.

## VENUE

2. Venue of this court is proper in this judicial district pursuant to California Code of Civil Procedure Section 395. Defendant WELLS FARGO BANK N.A.'s obligation and liability arise in this county, because the purported contract at issue was made within the office located in this county, and the subject real property is situated within this County. Plaintiffs are informed and believes that Defendants WELLS FARGO BANK N.A, FIRST AMERICAN TRUSTEE SERVICING SOLUTIONS, LLC, and all PERSONS UNKNOWN claiming any legal or equitable right, title, estate, lien, or interest in the property described in the complaint adverse to Plaintiffs' title, or any cloud on Plaintiffs' title thereto, conducts business continually in this County.

## PARTIES

### PLAINTIFFS

3. Plaintiffs Jennifer McCandless and Dinesh Perera is as was at all times mentioned in this Complaint residents of Santa Barbara County, State of California with an address of 67 Almadea Padre Serra Santa Barbara, California 93103.

### DEFENDANTS

4. WELLS FARGO BANK N.A., is as was at all times mentioned in this complaint a Federally chartered bank doing business in various parts of the United States and in California.

5. FIRST AMERICAN TRUSTEE SERVICING SOLUTIONS, LLC, is and was at all times mentioned in this complaint a Texas corporation, organized and exists under the

**Complaint For Quite Title 2**

**Exhibit 1
Page 2 of 19**

laws of the State of Texas, with it's principal place of business within the State of Texas while also doing business throughout the State of California was and is a debt collector acting in the capacity of collecting debts.

6.  All PERSONS UNKNOWN, claiming any legal or equitable right, title, estate, lien, or interest in the property described in the complaint adverse to Plaintiffs' title, or any cloud on Plaintiffs' title thereto, are unknown to Plaintiffs at this time and each of them constitutes a cloud on Plaintiff's property at this time.

7.  All such Defendants whether known or unknown to Plaintiffs at this time are in some way responsible for the cloud on Plaintiff's real property as alleged herein. Any reference to any Defendant in general, or a named Defendant, or UNKNOWN PERSONS incorporated therein, is a reference to each and every defendant.

8.  Plaintiffs are informed and believe, and thereon allege that all times relevant herein, each Defendant, regardless of how named, were designated the agent, servant, and/or employee of each and every other Defendant, and all times relevant herein, acting within the scope, purpose, and course of said agency, service and employment with the express and or implied knowledge, permission, and consent of each Defendant, and each Defendant ratified and approved the acts of all the other Defendants.

## STATEMENT OF THE CASE

9. Plaintiffs, Dinesh Perera and Jennifer McCandless, files this action for Quiet Title to real property against all named Defendant(s), their Agents, Assigns, Affiliates, Successors, Successors-In-Interest and all PERSONS UNKNOWN claiming any legal or equitable right, title, estate, lien, or interest in the property described in the complaint adverse to Plaintiffs' title, or any cloud on Plaintiffs' title.

10. Plaintiffs are the owners concurrently, as husband and wife, to certain real property, namely situated in Santa Barbara County, California, and described as 67 Alameda Padra Serra Santa Barbara, California 93103;  Parcel ID Number: 015-152-02; described as follows:

**Complaint For Quite Title 3**

**Exhibit 1
Page 3 of 19**

1   *That portion of Pueblo Lot No. 74 of the Outside Pueblo Lands of the City of Santa, in the the*

2   *City of Santa Barbara, County of Santa Barbara, State of California, described as follows;*

3   *Beginning at the cross cut on the pavement in the center line of Alameda Padre Serra, set by*

4   *George Am Miller, Registered Engineer #1122, from which a ¾ inch survey pipe set on the*

5   *Southeasterly line of said road bears South 24 degrees 55' East, 30.23 feet distant, said point of*

6   *beginning being the Northwesterly corner of the tract of land described in the deed from Frank*

7   *M. Gallaher to Frederick H. Cowles, et al., filed November 20, 1935 in the office of the*

8   *Registrar of Titles as Torrens Document No. 1231, and a duplicate thereof recorded November*

9   *20, 1935 in Book 343, Page 241 of Official Records, records of said County; thence along the*

10  *center line of said Alameda Padre Serra, South 57 degrees 59' West, 87.51 feet, more or less, to*

11  *the most Westerly corner of the tract of land described in the deed to Roy R. Kennedy, et ux.,*

12  *filed September 23, 1947 In the office of the Registrar of Titles as Torrens Document No. 2209,*

13  *and a duplicate thereof recorded September 23, 1947 in Book 744, Page 450 of Official Records,*

14  *records of said County, said point being the true point of beginning of the property herein*

15  *described; thence continuing along the center line of Alameda Padre Serra, South 57 degrees*

16  *59' West, 84.07 feet, more or less, to the most Northerly corner of the tract of land described in*

17  *the deed to Samuel Gerson, et ux., registered August 2, 1948 in the office of the said Registrar of*

18  *Titles as Torrens Document No. 2406, a duplicate thereof recorded August 2, 1948 in Book 798,*

19  *Page 35 of Official Records, records of said County; thence along the Northeasterly line of said*

20  *Gerson Tract of land, South 29 degrees 01' East , 208.69 feet to the most Easterly corner of said*

21  *Gerson tract of land, said point being a point in the Southeasterly line of the tract of land*

22  *described in the deed to John Bjornen, et ux., registered October 8, 1945 In the office of the said*

23  *Registrar of Titles as Torrens Document No. 1890 and a duplicate thereon recorded October 8,*

24  *1945 in Book 668, Page 148 of Official Records, records of said County; thence along the*

25  *Southeasterly line of said Bjornen tract of land, North 57 degrees 59' East, 72.55 feet to the most*

26  *Southerly corner of said Kennedy Tract of land, above referred to; thence along the*

27  *Southwesterly line of said Kennedy Tract of land, North 25 degrees 52' West, 209.61 feet to the*

28  *true point of beginning. Except therefrom that portion conveyed to the City of Santa Barbara by*

**Complaint For Quite Title 4**

**Exhibit 1**
**Page 4 of 19**

1  *deed recorded December 20, 1921 as Instrument No. 7082 in Book 202, Page 189 of Deeds.*

2  *Said lands is shown with other lands on a map of survey filed in Book 29, Page 34 or Record of*

3  *Surveys, In the office of the County Recorder of said County.*

4      11. The basis or Plaintiff's title is a "Grant Deed" from Lennie Adams, granting the above

5  -described property in fee simple to Plaintiffs dated December 12, 2006, and recorded in the

6  Official Records of the County of Santa Barbara, APN No. 015-1152-02; Title No. 04001912-08;

7  Escrow No. 04001912-400-SNL. Please see a copy of the "Grant Deed" attached hereto and

8  made a part hereof  as **Exhibit "A"**.

9      12. Plaintiff's are informed and believe and on such information and belief allege that

10  Defendants, WELLS FARGO BANK N.A.,  FIRST AMERICAN TRUSTEE SERVICING

11  SOLUTIONS, LLC, and All PERSONS UNKNOWN claims an interest adverse to Plaintiffs in

12  the above-described property as a purported unfulfilled obligation or unpaid unsecured debt

13  arising from an alleged breach of a mortgage contract purportedly secured by a "Deed of Trust".

14

15                                       **STATEMENT OF FACTS**

16

17      13. On or about December 15, 2006 Plaintiffs Jennifer McCandless and Dinesh Perera applied

18  for a "Loan" from Defendant WELLS FARGO BANK N.A. for the specific purpose of

19  purchasing the above mentioned real property. The "Loan" amount was to be valued at $783.200

20  U.S. Dollars amortized at 6.125 percent per Annam for 30 years. Defendant WELLS FARGO

21  BANK N.A. Presented the "Loan" application to Plaintiffs. Plaintiffs paid to Defendant WELLS

22  FARGO BANK N.A. the sum of $172,276.85 in U.S. Dollars as a down payment towards the

23  purported "Loan". Plaintiffs completed the "Loan" application which was accepted by Defendant

24  WELLS FARGO BANK N.A. Defendant WELLS FARG BANK N.A. then presented to

25  Plaintiffs a "Promissory Note" for Plaintiffs to sign  which set forth the terms and conditions of

26  the "Loan" amount and it's payback terms.

27      14. At the closing of the "Loan", Defendant WELLS FARGO BANK N.A. or one of its

28  affiliates created a "Deed of Trust" document naming FIDELITY NATIONAL TITLE

**Exhibit 1**
**Page 5 of 19**

1   INSURANCE COMPANY as "Trustee", and the Defendant WELLS FARGO BANK N.A. as
2   the "Beneficiary" to the trust document. Defendant WELLS FARGO BANK N.A. or one of its
3   affiliates, when drafting the language of this "Deed of Trust" document, used terms such as
4   "Trust", "Beneficiary", "Trustee", "Deed of Trust", "Successor In Interest", "Covenants",
5   "Beneficial Interest", "Reconveyance", "Substitute Trustee" to mislead and induce Plaintiffs into
6   entering what Plaintiffs believed to have been an actual <u>Trust Document</u> agreement for the
7   benefit of Plaintiffs' lawful equitable interest and true ownership rights in the aforementioned
8   real property. In actuality, Defendant WELLS FARGO BANK N.A. or its affiliate, while
9   drafting the language of the aforementioned Trust Document never intended to secure Plaintiffs
10  lawful equitable and true ownership interest in said real property. This document titled Deed of
11  Trust is not in anyway constructed like, or instituted like a true trust. None of the other parties
12  mentioned within the Trust agreement counter-signed the document designating their beneficial
13  capacity or interest within provisions of the Trust agreement. It's just an agreement purported to
14  be a <u>Security Instrument</u> which none of the Defendants endorsed or counter-signed to show
15  evidentiary proof that they were <u>a party</u> to the agreement.

16      15. On page 11 of covenant 16, the Trust Deed document describes the Deed of Trust as a
17  <u>Security Instrument which shall be governed by federal law and the law of the jurisdiction in</u>
18  <u>which the property is located</u>. Within the language of this recital, it is not disclosed which
19  specific federal statute, regulation or rule will govern this agreement. Both agreements, the
20  Promissory Note and Deed of Trust documents are not countersigned by any of the Defendants.
21  None of the Defendants have shown good faith dealings with Plaintiffs regarding these alleged
22  agreements.

23      16. On or about August 20, 2010,  FIRST AMERICAN TRUSTEE SERVICING
24  SOLUTIONS, LLC mailed or caused to mailed to Plaintiffs a NOTICE OF DEFAULT AND
25  ELECTION TO SELL UNDER DEED OF TRUST. Plaintiffs do not recognize this Defendant as
26  being a party to any agreements signed by Plaintiffs. Further, Defendant FIRST AMERICAN
27  TRUSTEE SERVICING SOLUTIONS, LLC purports to be acting as a debt collector attempting
28  to collect a debt without submitting proof of indebtedness to plaintiffs. On the lower portion of

**Exhibit 1
Page 6 of 19**

1 Defendant's Notice it reads: *First American Trustee Servicing Solutions, LLC, formerly known*

2 *as First American Loan Star Trustee Services, LLC, may be acting as a debt collector*

3 *attempting to collect a debt. Any information obtained may be used for that purpose.* Please see

4 copy of Defendant's NOTICE attached hereto and made a part hereof as *Exhibit "B".*

5

6 <center>**LEGAL CLAIMS**</center>

7 <center>**(COMMON LAW FRAUD)**</center>

8 <center>**(By Plaintiffs against all Defendants)**</center>

9    17. Plaintiff re-alleges and incorporates herein by reference paragraphs 1 through 16 of this

10 Complaint as though fully set forth herein.

11    18. The concept of Fraud, and its many variations, are well known and well settled in

12 American Law. The instant action is, filed by Plaintiffs is a prima facie case of the cause of

13 action enumerated herein and below.

14    19. **Fraud** is defined in Black's law dictionary as:

15       An intentional perversion of the truth for the purpose of

16       inducing another in reliance upon it to part with some

17       valuable thing belonging to him or to surrender a legal

18       right. A false representation of a matter of fact, whether

19       by words or by conduct, by false or misleading Allegations,

20       or by concealment of that which should have been disclosed,

21       which deceives and is intended to deceive another so that

22       he shall act upon it to his legal injury.  Fraud as applied

23       to contracts, is the cause of an error bearing on a

24       material part of the contract, created or continued by

25       artifice, with design to obtain some unjust advantage to

26       the one party, or to cause an inconvenience or loss to the

27       other.

28

<div align="right">

**Exhibit 1**

Complaint For Quite Title 7 **Page 7 of 19**

</div>

20. The actions of Defendants in creating the Promissory Note and Deed of Trust agreements to induce Plaintiff to sign while Defendants never intended to counter-signed, squarely fits the circumstances for fraud as defined herein. For Defendant WELLS FARGO BANK N.A. to induce Plaintiffs to sign a Promissory Note requiring specific performance and obligations from Plaintiffs while at the same time avoiding their lawful requirements to counter-sign is fraudulent. Defendant  WELLS FARGO BANK N.A's actions in not counter-signing the agreement-become-Promissory note was a cause of an error bearing a material part of a contract, created and continued by artifice, with design to obtain some unjust advantage to Defendants and to convert Plaintiffs real property to themselves.

21. Defendant WELLS FARGO BANK N.A.'s, own original contract, which must, by American legal standards, be most harshly construed against the maker of the contract, i.e., the Defendant, is the best evidence of the fraud[s] involved. No contract born in fraud ever existed, further the purported contract would be unenforceable.

22. Plaintiffs will demand absolutely that Defendant WELLS FARGO BANK N.A., produce this original allege agreement or contract to the Court.

23. The actions of Defendant  FIRST AMERICAN TRUSTEE SERVICING SOLUTIONS, LLC   whom Plaintiffs have no contractual obligation to, and who is not a signatory on the Trust agreement nor Promissory Note, fits the circumstances for fraud herein.

24. Where Defendant FIRST AMERICAN TRUSTEE SERVICING SOLUTIONS, LLC attempts to collect a debt wherein Defendants can not show a contractual nexus obligating Plaintiffs to pay Defendants any amount of money to Defendants, and/or where Defendant is not a party to a valid and lawful consumer contract or agreement binding Plaintiffs to Defendants constitutes fraud.

25. Defendant FIRST AMERICAN TRUSTEE SERVICING SOLUTIONS, LLC's action in sending to Plaintiffs the NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST constitutes fraud as defined and described herein. Defendant's actions in sending the Notice of Default was geared to pervert the truth of Defendant's lawful standing and capacity to sell Plaintiff's real property, and pervert the truth of any amount of money owed by Defendants.

**Exhibit 1
Page 8 of 19**

1   Defendant's actions were construed to induce Plaintiffs to rely on the Notice of Default so that

2   Plaintiffs would part with some valuable thing, Plaintiffs' money or Defendants would steal and

3   sell Plaintiffs' real property.

4

5                        **(CONSTRUCTIVE FRAUD-BREACH OF CONTRACT)**

6        **(By Plaintiffs against Defendants WELLS FARGO BANK N.A. &  FIRST AMERICAN**

7                             **TRUSTEE SERVICING SOLUTIONS, LLC)**

8        26. Plaintiffs re alleged and incorporate by reference all paragraphs above, as though fully set

9   forth in this cause of action. Res ipsa loquitur. For Defendants conduct in the unlawful

10  construction of, and the unlawful execution of the Promissory Note and Deed of Trust

11  agreements, the alleged agreements are legally unenforceable.

12

13                       **(FRAUDULENT CONVERSION OF REAL PROPERTY)**

14       **(By Plaintiffs against Defendants WELLS FARGO BANK N.A. &  FIRST AMERICAN**

15                            **TRUSTEE SERVICING SOLUTIONS, LLC)**

16       27. Plaintiffs re alleged and incorporate by reference all paragraphs above, as though fully set

17  forth in this cause of action.

18       28. A Fraudulent conversion charge occurs where an agent, bailee, fiduciary, or other person

19  entrusted with possession of property subsequently appropriates or converts such property to his

20  own use with the intent to permanently deprive the owner thereof.

21       29. Plaintiffs are informed upon information and belief and thereon allege that Defendants

22  WELLS FARGO BANK N.A. & FIRST AMERICAN TRUSTEE SERVING SOLUTIONS,

23  LLC, acted in concert with each other to create unlawful, misleading, misrepresented and

24  unenforceable instruments described as Promissory Notes and Deed of Trust documents with the

25  specific intent to cloud and slander title to Plaintiffs real property from the inception of

26  Defendants involvement with Plaintiffs. The fact that none of the Defendants bothered to

27  counter-sign the alleged agreements are proof on the record of their bad faith and "unclean

28  hands" in dealing with Plaintiffs.

**Exhibit 1
Page 9 of 19**

## VIOLATION OF THE FEDERAL FAIR DEBT COLLECTION PRACTICE ACT

## (By Plaintiffs against Defendants WELLS FARGO BANK N.A. & FIRST AMERICAN

## TRUSTEE SERVING SOLUTIONS)

30. Plaintiffs re alleged and incorporate by reference all paragraphs above, as though fully set forth in this cause of action

31. Defendants each are a "debt collector" within the meaning of the Federal Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, et. seq. The monies allegedly owed by Plaintiff are "debts" within the meaning of the Federal Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, et. seq. By the acts and practices described herein Defendant(s) have violated these Laws, as follows, without limitation:

1. By making false, deceptive, or misleading representations in connection with the collection of any debt, 15 U.S.C. § 1692e;

2. By making false representations or using deceptive means to collect on any debt, 15 U.S.C. § 1692e(10); and

3. By using unfair or unconscionable means to collect or attempt to collect any debt, 15U.S.C. § 1692(f).

32. The "supremacy clause" of the Federal Constitution is stronger than state public policy and compels a state to enforce federal statutes regardless of its "penal" character or of other objections of local policy *(Testa v. Katt  1947 330 U.S. 386, 67 S. Ct. 810, 91 L.Ed. 967).*

*"For the policy of the federal Act is the prevailing policy in every state".*

33. Defendant's actions in mailing or causing to be mailed to Plaintiffs the Notice of Default demanding the amounts of $22,910.04 constitutes an attempt to collect an unsecured debt in violation of The Federal Fair Debt Collection Practice Act, 15 U.S.C. §§ 1692, et. Seq.

34. Plaintiffs are seeking to quite title against the claims of Defendants as follows: The claims of all UNKNOWN PERSONS described in paragraphs 6, 7, 8 and 12. The claims of Defendants WELLS FARGO BANK N.A. & FIRST AMERICAN TRUSTEE SERVING SOLUTIONS as described in paragraph 12.

**Exhibit 1
Page 10 of 19**

35. The claims of Defendants are without any right whatsoever and such Defendants have no right, title, estate, lien, or lawful interest whatsoever in the above-described property or any part thereof.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff pray for relief against all Defendants follows:

1. For a judgment that Plaintiffs are the owners in fee simple of the property and that Defendants have no interest in the property adverse to Plaintiffs;

2. For costs of suit herein incurred; and

3. Such other relief as this Honorable Court deems just, proper and equitable.

## **VERIFICATION**

I Jennifer McCandless and Dinesh Perera, are the Plaintiffs in the above entitled action. We have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, We believe to be true.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed in Santa Barbara, California.

Dated: May 16, 2011

_____
Dinesh Perera

_____
Jennifer McCandles
67 Alameda Padra Serra
Santa Barbara, California 931031
Plaintiffs in Propria Persona
805-448-7961

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT "A"**

**Exhibit 1
Page 12 of 19**

RECORDING REQUESTED BY
LAND AMERICA LAWYERS TITLE

RECORDING REQUESTED BY
Lawyers Title Co
WHEN RECORDED MAIL THIS DOCUMENT
AND TAX STATEMENTS TO:

**Dinesh Perera
Jennifer McCandless**

67 Alameda Padre Serra
Santa Barbara, CA 93103

APN: 015-152-02
Escrow No: 04001912-400-SNL
Title No: 04001912-08

| | |
|---|---|
| 2006-0098212 | |
| Recorded | REC FEE 10.00 |
| Official Records | TAX 1076.98 |
| County of | SURVEY MONUMENT 10.00 |
| Santa Barbara | |
| Joseph E. Holland | |
| | CD |
| 08:00AM 19-Dec-2006 | Page 1 of 2 |

Space above this line for Recorder's use

## GRANT DEED

**MONUMENT SURVEY $10.00**

THE UNDERSIGNED GRANTOR(S) DECLARE(S)
DOCUMENTARY TRANSFER TAX IS **$1,076.90**, CITY TAX $ **0.00**
computed on full value of property conveyed.
City of Santa Barbara

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,

**Lennie Adams, an unmarried woman**

hereby GRANT(S) to

**Dinesh Perera and Jennifer McCandless, Husband and Wife as Community Property**

the following described real property in the City of Santa Barbara County of Santa Barbara, State of California:
**See Exhibit A attached hereto and made a part hereof.**

Commonly known as: 67 Alameda Padre Serra, Santa Barbara, CA 93103

Dated: December 12, 2006

Lennie Adams

STATE OF CALIFORNIA
COUNTY OF _Santa Barbara_ } SS:
On _12-13-06_ before me, _Susan N. Lowe_ a Notary Public,
personally appeared _Lennie Adams_
personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the
person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____

[Notary Seal: SUSAN N. LOWE, Comm. # 1561616, NOTARY PUBLIC-CALIFORNIA, County of Santa Barbara, My Comm. expires April 17, 2008]

FOR NOTARY SEAL OR STAMP

MAIL TAX STATEMENTS AS DIRECTED ABOVE

# Exhibit 1
# Page 13 of 19

## Exhibit A

All that certain real property situated in the County of Santa Barbara, State of California, described as follows:

That portion of Pueblo Lot No. 74 of the Outside Pueblo Lands of the City of Santa, in the City of Santa Barbara, Barbara, County of Santa Barbara, State of California, described as follows:

Beginning at a cross cut on the pavement in the center line of Alameda Padre Serra, set by George A. Miller, Registered Engineer #1122, from which a ¾ inch survey pipe set on the Southeasterly line of said road bears South 24°55' East, 30.23 feet distant, said point of beginning being the Northwesterly corner of the tract of land described in the deed from Frank M. Gallaher to Frederick H. Cowles, et al., filed November 20, 1935 in the office of the Registrar of Titles as Torrens Document No. 1231, and a duplicate thereof recorded November 20, 1935 in Book 343, Page 241 of Official Records, records of said County;

thence along the center line of said Alameda Padre Serra, South 57°59' West, 87.51 feet, more or less, to the most Westerly corner of the tract of land described in the deed to Roy R. Kennedy, et ux., filed September 23, 1947 in the office of the Registrar of Titles as Torrens Document No. 2209, and a duplicate thereof recorded September 23, 1947 in Book 744, Page 450 of Official Records, records of said County, said point being the true point of beginning of the property herein described;

thence continuing along the center line of Alameda Padre Serra, South 57°59' West, 84.07 feet, more or less, to the most Northerly corner of the tract of land described in the deed to Samuel Gerson, et ux., registered August 2, 1948 in the office of the said Registrar of Titles as Torrens Document No. 2406, a duplicate thereof recorded August 2, 1948 in Book 798, Page 35 of Official Records, records of said County;

thence along the Northeasterly line of said Gerson Tract of land, South 29°01' East, 208.69 feet to the most Easterly corner of said Gerson Tract of land, said point being a point in the Southeasterly line of the tract of land described in the deed to John Bjornen, et ux., registered October 8, 1945 in the office of the said Registrar of Titles as Torrens Document No. 1890 and a duplicate thereof recorded October 8, 1945 in Book 668, Page 148 of Official Records, records of said County;

thence along the Southeasterly line of said Bjornen Tract of land, North 57°59' East, 72.55 feet to the most Southerly corner of said Kennedy Tract of land above referred to;

thence along the Southwesterly line of said Kennedy Tract of land, North 25°52' West, 209.61 feet to the true point of beginning.

Excepting therefrom that portion conveyed to the City of Santa Barbara by deed recorded December 20, 1921 as Instrument No. 7082 in Book 202, Page 189 of Deeds.

Said land is shown with other lands on a map of survey filed in Book 29, Page 34 of Record of Surveys, in the office of the County Recorder of said County.

**Exhibit 1**
**Page 14 of 19**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT "B"**

**Exhibit 1
Page 15 of 19**

First American
Trustee Servicing Solutions, LLC
PO Box 9060
Temecula, CA 92589-9060



2239169657

PRESORT
First-Class Mail
U.S. Postage and
Fees Paid
WSO

*Send Correspondence to:*
First American
Trustee Servicing Solutions, LLC
P.O. Box 961253
Fort Worth, TX 76161-0253

20100830-44
CA10-FC

PERERA, DINESH
67 ALAMEDA PADRE SERRA
SANTA BARBARA, CA 93103-2870

# IMPORTANT INFORMATION IS CONTAINED WITHIN THE ATTACHED NOTICE.

## PLEASE READ CAREFULLY

**First American Trustee Servicing Solutions, LLC, formerly known as First American LoanStar Trustee Services, LLC, may be acting as a debt collector attempting to collect a debt.  Any information obtained may be used for that purpose.**

**PLEASE NOTE:**  Effective June 1, 2010, First American LoanStar Trustee Services, LLC is now First American Trustee Servicing Solutions, LLC.

Visit us at www.fatrustee.com for more information.



# Exhibit 1
# Page 16 of 19

2239169657

Recording Requested By:
**First American Title Insurance Company**

CERTIFIED BY FIRST AMERICAN TITLE
INSURANCE COMPANY TO BE A COPY
OF THE DOCUMENT RECORDED ON 08/25/2010
AS INSTRUMENT NO. 2010-0045956
IN BOOK                    PAGE
OFFICIAL RECORDS OF  SANTA BARBARA

When Recorded Mail To:
**First American Trustee Servicing Solutions, LLC**
**6 Campus Circle, 2nd Floor**
**Westlake, TX 76262**

Space above this line for Recorder's use only

TS No. :       CA1000209137
APN:           015-152-02
TSG No. :    4521021

**Pursuant to California Code Section 2924c(b)(1) please be advised of the following:**

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

### IMPORTANT NOTICE

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may have the legal right to bring your account into good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five days business days prior to the date set for the sale of your property. No sale date may be set until three months from the date this Notice of Default may be recorded (which date of recordation appears on this notice).

This amount is **$22,910.04** as of 08/23/2010, and will increase until your account becomes current. While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the three month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2);

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

**Wells Fargo Bank, NA**
**c/o First American Trustee Servicing Solutions, LLC**
**6 Campus Circle, 2nd Floor**
**Westlake, TX 76262**



# Exhibit 1
# Page 17 of 19

# NOTICE OF DEFAULT DECLARATION
## PURSUANT TO CALIFORNIA CIVIL CODE 2923.5

Wells Fargo Home Mortgage
3476 Stateview Blvd.
Fort Mill, SC 29715

Borrower: JENNIFER MCCANDLESS
Property Address:   67 ALAMEDA PADRE SERRA
                    SANTA BARBARA    CA    93103

The undersigned mortgagee, beneficiary, or their authorized agent (collectively, the "Beneficiary") represent and declares that the requirements of CA Civil Code 2923.5 have been met.  This Declaration is required for any residential owner occupied property in which the loan was originated between January 1, 2003 and December 31, 2007.  Non-owner occupied property and vacant property are exempt from the requirements of CA Civil Code 2923.5.

One of the below necessary requirements was met by the Beneficiary:

* The Beneficiary has made contact with the borrower pursuant to CA Civil Code 2923(a)(2).  Contact with the borrower was made in person or by telephone to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure.

* Due Diligence to contact the borrower was exercised pursuant to CA Civil Code 2923.5(g)(2) by the Beneficiary.

* The borrower has surrendered the property as evidenced by either a letter confirming the surrender or delivery of the keys to the property to the mortgagee, Trustee, beneficiary, or authorized agent pursuant to CA Civil Code 2923.5(h)(1).

* The borrower has contracted with an organization, person, or entity whose primary business is advising people who have decided to leave their homes on how to extend the foreclosure process and avoid their contractual obligations to mortgagees or beneficiaries pursuant to CA Civil Code 2923.5(h)(2).

* The borrower has filed for bankruptcy and the proceedings have not been finalized pursuant to CA Civil Code 2923.5(h)(3).

I certify (or declare) under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated:   08/20/2010

Wells Fargo Home Mortgage

China Brown

VP of Loan Documentation

**Exhibit 1**

**Page 18 of 19**



POS-030

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|

Jennifer McCandless,
Dinesh perera
67 Alameda Padre Serra
Santa Barbara CA 93103
In Pro Per

TELEPHONE NO.:805-448-7961          FAX NO. *(Optional):*
E-MAIL ADDRESS *(Optional):*
ATTORNEY FOR *(Name):*

SUPERIOR COURT OF CALIFORNIA, COUNTY OF
STREET ADDRESS:1100 Anacapa Street
MAILING ADDRESS:
CITY AND ZIP CODE:Santa Barbara, California 93101
BRANCH NAME:Santa Barbara - Anacapa Division

PETITIONER/PLAINTIFF:Jennifer McCandless, Dinesh Perera

RESPONDENT/DEFENDANT:Attorney for Wells Fargo Bank N.A. 1350. Treat
Blvd. Suit 420. Walnut Creek, CA 94597

**FILED**
SUPERIOR COURT of CALIFORNIA
COUNTY of SANTA BARBARA

MAY 1 6 2011

GARY M. BLAIR, Executive Officer
BY_____
Merilee A Jav. Deputy Clerk

| PROOF OF SERVICE BY FIRST-CLASS MAIL—CIVIL | CASE NUMBER: |
|---|---|
| | 1374299 |

*(Do not use this Proof of Service to show service of a Summons and Complaint.)*

1. I am over 18 years of age and not a party to this action. I am a resident of or employed in the county where the mailing took place.

2. My residence or business address is:
   333. W. Victoria Street. Santa Barbara CA. 93101

3. On *(date):*May. 16. 2011        I mailed from *(city and state):* Santa Barbara, California
   the following **documents** *(specify):*
   1st. Amended Complaint To Quiet Title

   ☐ The documents are listed in the *Attachment to Proof of Service by First-Class Mail—Civil (Documents Served)*
   (form POS-030(D)).

4. I served the documents by enclosing them in an envelope and *(check one):*
   a. ☑ depositing the sealed envelope with the United States Postal Service with the postage fully prepaid.
   b. ☐ placing the envelope for collection and mailing following our ordinary business practices. I am readily familiar with this
        business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is
        placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in
        a sealed envelope with postage fully prepaid.

5. The envelope was addressed and mailed as follows:
   a. Name of person served: Dawe & Christopherson LLP
   b. Address of person served:
      1350. Treat Blvd. Suite 420. Walnut Creek, CA 94597

   ☐ The name and address of each person to whom I mailed the documents is listed in the *Attachment to Proof of Service
   by First-Class Mail—Civil (Persons Served)* (POS-030(P)).

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:May 16. 2011

Thomas Tarleton                                          ▶ _____
(TYPE OR PRINT NAME OF PERSON COMPLETING THIS FORM)              (SIGNATURE OF PERSON COMPLETING THIS FORM)

Form Approved for Optional Use
Judicial Council of California
POS-030 [New January 1, 2005]
**PROOF OF SERVICE BY FIRST-CLASS MAIL—CIVIL**
**(Proof of Service)**
Code of Civil Procedure, §§ 1013, 1013a
www.courtinfo.ca.gov

**Exhibit 1**
**Page 19 of 19**

Mar 04 11 09:34a     Dinesh Perera                          805-     -6316              p.3

SUM-100

## SUMMONS
### (CITACION JUDICIAL)

| | FOR COURT USE ONLY<br>(SOLO PARA USO DE LA CORTE) |
|---|---|

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

WELLS FARGO BANK N.A.
FIRST AMERICAN TRUSTEE SERVICING SOLUTIONS, LLC

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

Jennifer McCandless
Dinesh Perera

**F I L E D**
SUPERIOR COURT of CALIFORNIA
COUNTY of SANTA BARBARA

MAR 0 3 2011

GARY M. BLAIR, Executive Officer
BY _Denyse Avila_
DENYSE AVILA, Deputy Clerk

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* SUPERIOR COURT OF CALIFORNIA<br>SANTA BARBARA COUNTY<br>1100, Anacapa Street, Santa Barbara, CA 93101 | CASE NUMBER:<br>*(Número del Caso):*<br>**1374299** |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Jennifer McCandless, Dinesh Perera, 67 Alameda Padre Serra, Santa Barbara CA 93103

DATE: March 3, 2011                                    GARY M. BLAIR, EXECUTIVE OFFICER
*(Fecha)*      MAR 0 3 2011      Clerk, by **DENYSE AVILA**            , Deputy
                              *(Secretario)*                              *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):* Wells Fargo Bank N.A.

under: ☒ CCP 416.10 (corporation)              ☐ CCP 416.60 (minor)
       ☐ CCP 416.20 (defunct corporation)      ☐ CCP 416.70 (conservatee)
       ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
       ☐ other *(specify):*
4. ☒ by personal delivery on *(date):*          MAR 0 4 2011

Page 1 of 1

Form Adopted for Mandatory Use                    **SUMMONS**                    Code of Civil Procedure §§ 412.20, 465
Judicial Council of California                                                    www.courtinfo.ca.gov
SUM-100 [Rev. July 1, 2009]

# Exhibit 2

1   Jennifer McCandless

2   Dinesh Perera

3   67 Alameda Padre Serra

4   Santa Barbara CA 93103

5   In Pro Per

<br>

**F I L E D**
SUPERIOR COURT of CALIFORNIA
COUNTY of SANTA BARBARA

**MAR 0 3 2011**

GARY M. BLAIR, Executive Officer
BY ~Denyse Avila~
DENYSE AVILA, Deputy Clerk

6                IN THE SUPERIOR COURT OF CALIFORNIA

7          IN AND FOR SANTA BARBARA COUNTY, STATE OF CALIFORNIA

8

| | |
|---|---|
| 9   Jennifer McCandless, | |
| 10  Dinesh Perera | CASE NO.:        **1374299** |
| 11            Plaintiff, | |
| 12  v. | **SUIT TO QUIET TITLE** |
| 13  Wells Fargo Bank N.A. *SERVICING SOLUTION* | |
| 14  First American Trustee ~Services, LLC~ *LLC* | |
| 15  and Does 1 through 50 | |
| 16            Defendant, | |

17                    **SUIT TO QUIET TITLE**

18   Loan Number:        0071652697

19   Instrument Number:   2006-0098213

20   Property Address:    67 Alameda Padre Serra, Santa Barbara, CA 93103

21   Parcel ID Number: 015-152-02

22   Legal Description: (see EXHIBIT A)

23                    **JURISDICTION AND VENUE**

24   1.  Property is in Santa Barbara County and therefore falls under this Honorable Court's jurisdiction.

25   2.  Real Estate is governed by State Law and therefore this Court has priority Jurisdiction.

26   3.  The Plaintiff lives in SANTA BARBARA County and the Defendant has done extensive business in

27       SANTA BARBARA County.

28   **JUDICIAL NOTICE**

**Exhibit 3**
**Page 1 of 33**

4.  Plaintiff moves this Honorable Court to take Mandatory Judicial Notice under the Federal Rules of Civil Procedure Rule 201 (d) of the following:

5.  The United States Supreme Court, in Haines v Kerner 404 U.S. 519 (1972), said that, all litigants defending themselves must be afforded the opportunity to present their evidence and that the Court should look to the substance of the complaint rather than the form.

6.  In Platsky v CIA, 953 F.2d 26 (2nd Cir. 1991), the Circuit Court of Appeals allowed that, the District Court should have explained to the litigant proceeding without a lawyer, the correct form to the plaintiff so that he could have amended his pleadings accordingly. Plaintiff respectfully reserves the right to amend this complaint.

7.  Under the Federal Rules of Evidence 1002 and 1003 governing the admissibility of duplicates, any photocopies brought in as evidence are considered to be forgeries. It is unfair to admit a photocopy in the place of an original as there are information contained within the original that is not in a photocopy, specifically the only legally binding chain of title to the promissory note.

8.  Under Uniform Commercial Code - ARTICLE 3 -§3-308, all signatures presented that is not on an original format (with the original wet ink signature) is hereby denied and is inadmissible.

PARTIES

9.  The Plaintiff is Jennifer McCandless, and Dinesh Perera who is the legal title owner of the real estate property located in this county.

10. The Defendant is Wells Fargo Bank N.A.

11. who is the current servicer of the promissory note.

12. The Defendant is Wells Fargo Bank N.A.

13. wishing to lay claim on the property as a real party of interest.

14. The Defendant is First American Trustee Services, LLC who is a debt collector, attempting to collect a debt.

15. The Defendant is First American Trustee Services, LLC wishing to lay claim on the property as a real party of interest.

FACTUAL ALLEGATIONS

16. The Title is clouded.

**Exhibit 3**
**Page 2 of 33**

1   17. The Plaintiff believes and alleges that there are significant controversy and clouding of the title to

2        the property and Deed of Trust.

3   18. Plaintiff motions this court to enter a judgment for Quiet Title.

4   19. The Plaintiff motions the court to order all parties with legal claim to stipulate and provide proof of

5        claim against the above Deed of Trust, else release their claim.

6   20. The "Lender" as defined on page one of the Deed of Trust is the Wells Fargo Bank N.A.

7        (see Exhibit B).

8   21. There is no evidence of transfer of ownership from the [Investor] to the Defendant.

9   22. Therefore, the Plaintiff alleges that the Defendant is not a real and beneficial party of interest.

10  23. The Plaintiff contends that the promissory note which the above Deed of Trust secures has been

11       securitized.

12  24. Under United States Supreme Court decision of Carpenter v. Longan, 83 U.S. 16 Wall. 271 271

13       (1872), the Deed of Trust follows the Promissory note.  Where the promissory note goes, the Deed

14       of Trust must follow.

15  25. The Plaintiff alleges that the Defendant, Wells Fargo Bank N.A.

16  26. Is the servicer and is not a real party of interest.

17  27. Under U.S.Code Title 12: Banks and Banking PART 226—TRUTH IN LENDING (REGULATION Z),

18       a servicer does not have the rights of a Lender

19  28. The Plaintiff alleges that the Defendant, First American Trustee Services, LLC is a debt collector,

20       attempting to collect a debt, and is not a real party of interest.

21  29. Under U.S.Code Title 12: Banks and Banking PART 226—TRUTH IN LENDING (REGULATION Z),

22       a debt collector does not have the rights of a Lender

23  30. The Lender as defined on one of the Deed of Trust is Wells Fargo Bank N.A.

24  31. The Plaintiff contends that Wells Fargo Bank N.A. may have fully sold their interest in the

25       promissory note in full as governed under Financial Accounting Standard Rule 140 (FAS 140).

26  32. Under FAS 140, the seller of an asset must sell the asset to a third party as an arms length

27       transaction.

28  33. Once an asset has been sold, the seller forever loses control of the asset.

**Exhibit 3**
**Page 3 of 33**

34. Furthermore, under FAS 140, the seller may not repurchase the asset for the purposes of "reattachment".

35. The seller may only repurchase the asset in an open market transaction as an unsecured note.

36. A servicer of a promissory note does not have the rights of a holder in due course.

37. A servicer is not a real and beneficial party of interest under U.S. Code Title 12: Part 226 (a) 1 - Truth in Lending (Regulation Z).

38. The Plaintiff alleges that the Defendant(s) lacks Standing to enforce the negotiable instrument. The Defendant(s) are not the real party of interest.

39. Under Federal Rules of Civil Procedure 17, an action must be taken in the name of a real party of interest.

40. Since the Defendant(s) is not a real and beneficial party of interest, the Defendant(s) cannot be a party to this controversy.

41. Under IRS rules governing ownership interest of an asset, tax must be paid by the owner of the promissory note for all interest/income/profits earned.

42. The Plaintiff contends that the promissory note was securitized into a REMIC (Real Estate Mortgage Investment Conduit), which is a SPV (Special Purpose Vehicle) for the purposes of tax exemption and direct pass through, in which only the individual shareholders pay the tax for any profits earned.

43. Therefore, the Plaintiff alleges that the real and beneficial interest holders of the promissory note are the individual shareholders of the REMIC.

44. Since no one party represents a real party of interest, then no one party may enforce the promissory note.

45. Under State Civil Code, a foreclosure must be done by a party entitled to enforce the promissory note.

46. The party must show evidence of the debt and standing.

47. There is no evidence that the Defendant has standing in this matter.

48. If the Defendant alleges they have reacquired the promissory note for the purposes of foreclosure, then the Defendant is bringing fraud before the court per U.S. Code Title 12: Part 226 (a) 1.

49. A loan, once securitized is permanently converted into a stock.  It is registered in the SEC database as a permanent fixture to the REMIC.

**Exhibit 3**
**Page 4 of 33**

50. In the event of a default, the REMIC (and therefore the individual shareholders) write off the debt and receives tax credit for the write off.

51. Therefore, the debt is discharged. The Plaintiff alleges that the debt has been discharged in full.

52. Since the language of the Deed of Trust in says "This Deed of Trust Secures a Promissory Note", and since the promissory note is not enforceable by any ONE PARTY, then the Deed of Trust is therefore invalid.

53. Further, since the debt has been discharged, then the Deed of Trust is doubly invalid.

54. As the owner and grantor of real property, the Plaintiff has a duty and right to defend the title to his property.

55. Since there are significant controversy over who is the real parties of interest are in the Deed of Trust, the Plaintiff hereby Moves this Court to enter an Order compelling all parties who can lay lawful claim on the Deed of Trust to do so by presentment of valid enforceable proof of claim.

56. If no one party can come forth to claim perfected security interest in the Deed of Trust, then the Plaintiff Moves this court to Declare the Deed of Trust to be null and void.

57. The Plaintiff alleges there has been an Invalid Assignment of the Deed of Trust.

58. On page 13 of the enclosed Deed of Trust (see Exhibit B), under "Substitute Trustee", the language clearly states that the Lender may, for any reason or cause, from time to time, remove Trustee and appoint a successor Trustee to any Trustee appoint hereunder.

59. The Lender as defined on one of the Deed of Trust is Wells Fargo Bank N.A.

60. This paragraph does not state that successors, assigns, or nominees which includes, MERS (Mortgage Electronic Registration System) may appoint a Successor Trustee.

**PRAYER FOR RELIEF**

61. WHEREFORE, Plaintiff respectfully moves this Honorable Court to enter a judgment ordering the following remedies:

62. Declare the Deed of Trust to be null and void.

63. Declare the promissory note to be declared fully discharged.

64. For a declaration and determination that Plaintiff___ is___ the rightful holder of title to the property and that Defendant___ herein, and each of them, be declared to have no estate, right, title or interest in said property.

**Exhibit 3
Page 5 of 33**

1    65. Granting any such other relief as is necessary and appropriate.

2

3

4

5

6    I, declare under penalty of perjury under the laws of the State of California that the foregoing is true

7    and accurate. Executed on the ___3___ day of March 2011 in Santa Barbara CA.

8

9

10   Jennifer McCandless, Plaintiff

11

12   I, declare under penalty of perjury under the laws of the State of California that the foregoing is true

13   and accurate. Executed on the ___3___ day of March 2011 in Santa Barbara CA.

14

15

16   Dinesh Perera, Plaintiff

17

18

19

20

21

22

23

24   **Exhibit A – LEGAL DESCRIPTION**

25

26

27

28

**Exhibit 3
Page 6 of 33**

File No: 04001912

# EXHIBIT "A"

All that certain real property situated in the County of Santa Barbara, State of California, described as follows:

That portion of Pueblo Lot No. 74 of the Outside Pueblo Lands of the City of Santa, in the City of Santa Barbara, Barbara, County of Santa Barbara, State of California, described as follows:

Beginning at a cross cut on the pavement in the center line of Alameda Padre Serra, set by George A. Miller, Registered Engineer #1122, from which a ¾ inch survey pipe set on the Southeasterly line of said road bears South 24°55' East, 30.23 feet distant, said point of beginning being the Northwesterly corner of the tract of land described in the deed from Frank M. Gallaher to Frederick H. Cowles, et al., filed November 20, 1935 in the office of the Registrar of Titles as Torrens Document No. 1231, and a duplicate thereof recorded November 20, 1935 in Book 343, Page 241 of Official Records, records of said County;

thence along the center line of said Alameda Padre Serra, South 57°59' West, 87.51 feet, more or less, to the most Westerly corner of the tract of land described in the deed to Roy R. Kennedy, et ux., filed September 23, 1947 in the office of the Registrar of Titles as Torrens Document No. 2209, and a duplicate thereof recorded September 23, 1947 in Book 744, Page 450 of Official Records, records of said County, said point being the true point of beginning of the property herein described;

thence continuing along the center line of Alameda Padre Serra, South 57°59' West, 84.07 feet, more or less, to the most Northerly corner of the tract of land described in the deed to Samuel Gerson, et ux., registered August 2, 1948 in the office of the said Registrar of Titles as Torrens Document No. 2406, a duplicate thereof recorded August 2, 1948 in Book 798, Page 35 of Official Records, records of said County;

thence along the Northeasterly line of said Gerson Tract of land, South 29°01' East, 208.69 feet to the most Easterly corner of said Gerson Tract of land, said point being a point in the Southeasterly line of the tract of land described in the deed to John Bjornen, et ux., registered October 8, 1945 in the office of the said Registrar of Titles as Torrens Document No. 1890 and a duplicate thereof recorded October 8, 1945 in Book 668, Page 148 of Official Records, records of said County;

thence along the Southeasterly line of said Bjornen Tract of land, North 57°59' East, 72.55 feet to the most Southerly corner of said Kennedy Tract of land above referred to;

thence along the Southwesterly line of said Kennedy Tract of land, North 25°52' West, 209.61 feet to the true point of beginning.

**Exhibit 3
Page 7 of 33**

File No: 04001912

Excepting therefrom that portion conveyed to the City of Santa Barbara by deed recorded December 20, 1921 as Instrument No. 7082 in Book 202, Page 189 of Deeds.

Said land is shown with other lands on a map of survey filed in Book 29, Page 34 of Record of Surveys, in the office of the County Recorder of said County.

Assessor's Parcel Number:     **015-152-02**

**Exhibit 3
Page 8 of 33**

1 | Exhibit B – DEED OF TRUST AND PROMISSORY NOTE

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit 3
Page 9 of 33

Recording Requested By:
**WELLS FARGO BANK, N.A.**


Return To:
**WFHM FINAL DOCS X9999-01M**
**1000 BLUE GENTIAN ROAD**
**EAGAN, MN 55121**
Prepared By:
**WELLS FARGO BANK, N.A.**


**1595 SPRUCE ST,, RIVERSIDE, CA**
**925060000**
————————————————[Space Above This Line For Recording Data]————————————————

# DEED OF TRUST



## DEFINITIONS
Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

(A) "Security Instrument" means this document, which is dated DECEMBER 15, 2006 ,
together with all Riders to this document.
(B) "Borrower" is JENNIFER MCCANDLESS AND DINESH PERERA, WIFE AND HUSBAND




Borrower's address is 67 ALAMEDA PADRE SERRA
SANTA BARBARA        CA 93103       . Borrower is the trustor under this Security Instrument.
(C) "Lender" is WELLS FARGO BANK, N.A.

Lender is a NATIONAL ASSOCIATION
organized and existing under the laws of THE UNITED STATES
0071652697

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Form 3005  1/01
VMP® -6(CA) (0207).01
Page 1 of 15                    Initials:_____
NMFL #3005 (CACD) Rev 8/21/2006
        VMP Mortgage Solutions, Inc.



**Exhibit 3**
**Page 10 of 33**

Lender's address is P.O. BOX 17339, BALTIMORE, MD 212971339

Lender is the beneficiary under this Security Instrument.
(D) "Trustee" is FIDELITY NATIONAL TITLE INS CO
17911 VON KARMAN, SUITE 200, IRVINE, CA 92614
(E) "Note" means the promissory note signed by Borrower and dated
The Note states that Borrower owes Lender SEVEN HUNDRED EIGHTY THREE THOUSAND TWO
HUNDRED AND 00/100                                                                    Dollars
(U.S. $****783,200.00    ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than JANUARY 01, 2037.
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used
in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard

Exhibit 3
Page 11 of 33

to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

**TRANSFER OF RIGHTS IN THE PROPERTY**

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the **COUNTY**                                                        of **SANTA BARBARA**                                                 :
        [Type of Recording Jurisdiction]                        [Name of Recording Jurisdiction]
*SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF.*

*\*SEE ADJUSTABLE RATE RIDER
THIS IS A PURCHASE MONEY SECURITY INSTRUMENT.*

Parcel ID Number: **015-152-02**                              which currently has the address of
**67 ALAMEDA PADRE SERRA**                                                          [Street]
**SANTA BARBARA**                                      [City], California  **93103**          [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S.

VMP   -6(CA) (0207).01                     Page 3 of 15                        Initials:_____          Form 3005   1/01

**Exhibit 3
Page 12 of 33**

currency. However, if any check or other instrument received by Lender as payment under the Note or this
Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments
due under the Note and this Security Instrument be made in one or more of the following forms, as
selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or
cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a
federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

   Payments are deemed received by Lender when received at the location designated in the Note or at
such other location as may be designated by Lender in accordance with the notice provisions in Section 15.
Lender may return any payment or partial payment if the payment or partial payments are insufficient to
bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan
current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial
payments in the future, but Lender is not obligated to apply such payments at the time such payments are
accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay
interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring
the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply
such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding
principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower
might have now or in the future against Lender shall relieve Borrower from making payments due under
the Note and this Security Instrument or performing the covenants and agreements secured by this Security
Instrument.

   2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all
payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest
due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments
shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts
shall be applied first to late charges, second to any other amounts due under this Security Instrument, and
then to reduce the principal balance of the Note..

   If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a
sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and
the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received
from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be
paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or
more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall
be applied first to any prepayment charges and then as described in the Note.

   Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under
the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

   3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due
under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due
for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a
lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c)
premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance
premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage
Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow
Items." At origination or at any time during the term of the Loan, Lender may require that Community
Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and
assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to
be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives
Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's
obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

**Exhibit 3**
**Page 13 of 33**

Mar 04 11 09:42a     Dinesh Perera                          805-5  6316          p.19

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

**Exhibit 3**
**Page 14 of 33**

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification, and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with



**Exhibit 3**
**Page 15 of 33**

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable


**Exhibit 3**
**Page 16 of 33**

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

**Exhibit 3**
**Page 17 of 33**

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

Initials:_____

**Exhibit 3**
**Page 18 of 33**

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.



**Exhibit 3**
**Page 19 of 33**

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

**Exhibit 3
Page 20 of 33**

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

 -6(CA) (02071.01                        Page 12 of 15        Initials_____        Form 3005  1/01

**Exhibit 3**
**Page 21 of 33**

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

**Exhibit 3**
**Page 22 of 33**

**BY SIGNING BELOW,** Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____        _____ (Seal)
                                      JENNIFER MCCANDLESS              -Borrower


_____        _____ (Seal)
                                      DINESH PERERA                   -Borrower


_____ (Seal)  _____ (Seal)
                   -Borrower                             -Borrower


_____ (Seal)  _____ (Seal)
                   -Borrower                             -Borrower


_____ (Seal)  _____ (Seal)
                   -Borrower                             -Borrower

**Exhibit 3
Page 23 of 33**

**State of California**
**County of**
                                                        } ss.

**On**                           before me,
                                                              personally appeared

_ JENNIFER MCCANDLESS AND DINESH PERERA

                                                        , personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed
to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity
upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

                                            _____ (Seal)

VMP -6(CA) (0207).01          Page 15 of 15        Initials_____        Form 3005   1/01

**Exhibit 3**
**Page 24 of 33**

# INITIAL INTEREST<sup>SM</sup>ADJUSTABLE RATE NOTE
(1-Year Treasury Index - Rate Caps)
(Assumable after Initial Period)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

**DECEMBER 15, 2006**          **SANTA BARBARA**                     **CALIFORNIA**
          [Date]                      [City]                              [State]

**67 ALAMEDA PADRE SERRA, SANTA BARBARA, CA   93103**

                                    [Property Address]

## 1. BORROWER'S PROMISE TO PAY
In return for a loan that I have received, I promise to pay U.S. $ *****783,200.00  (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **WELLS FARGO BANK, N.A.**

I will make all payments under this Note in the form of cash, check or money order.
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST
Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of        **6.125** %. The interest rate I will pay will change in accordance with Section 4 of this Note.
The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS
(A) Time and Place of Payments
I will make a payment every month on the first day of the month beginning on **FEBRUARY 01, 2007**
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and if the payment consists of both principal and interest, it will be applied to interest before Principal. If, on **JANUARY 01, 2037**              , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my monthly payments at **WELLS FARGO HOME MORTGAGE, P.O. BOX 17339, BALTIMORE, MD 212971339**
or at a different place if required by the Note Holder.
(B) Amount of My Initial Monthly Payments
Before the first fully amortizing principal and interest payment due date stated in subsection (C) below (the "First P&I Payment Due Date"), my monthly payments will be only for the interest due on the unpaid principal of this Note.
Each of my initial monthly payments will be in the amount of U.S. $ *********3,997.58  . This amount may change in accordance with subsection (C) below.
(C) Monthly Payment Changes
The First P&I Payment Due Date is the first day of             **02/01/17**

0071652697
MULTISTATE INITIAL INTEREST ADJUSTABLE RATE NOTE - 1-Year Treasury Index (Assumable after Initial Period) - Single Family - Freddie Mac UNIFORM INSTRUMENT                                                         Form 5507 5/04 (rev. 7/05)
NMFL #8380 (MS1C) Rev 2/27/2006
VMP®-191N (0508)
     VMP Mortgage Solutions, Inc. (800)521-7291
Page 1 of 5                        Initials: _____



**Exhibit 3**
**Page 25 of 33**

Mar 04 11 09:54a    Dinesh Perera                      805-﹖-6316                   p.10

Prior to the First P&I Payment Due Date, my monthly payment may change to reflect changes in the interest rate I must pay in accordance with Section 4 of this Note or to reflect changes in the unpaid principal of my loan in accordance with Section 5 of this Note. Beginning with the First P&I Payment Due Date my monthly payment will change to an amount sufficient to repay the principal and interest at the rate described in Section 4 of this Note.

Before the effective date of any change in my monthly payment, the Note Holder will deliver or mail to me a notice of the change in accordance with Section 8 of this Note. The notice will include the title and telephone number of a person who will answer any question I may have regarding the notice.

## 4.  INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Interest Change Dates

The interest rate I will pay may change on the first day of JANUARY, 2017                           , and may change on that day every 12th month thereafter. Each date on which my interest rate could change is called an "Interest Change Date."

### (B) The Index

Beginning with the first Interest Change Date, my interest rate will be based on an Index. The "Index" is the weekly average yield on United States Treasury securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board. The most recent Index figure available as of the date 45 days before each Interest Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

Before each Interest Change Date, the Note Holder will calculate my new interest rate by adding TWO AND THREE-QUARTERS                percentage point(s) (        2.750 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Interest Change Date.

The Note Holder will then determine the amount of my monthly payment. For payment adjustments occurring before the First P&I Payment Due Date, my monthly payment will be the amount sufficient to repay all accrued interest each month on the unpaid principal balance at the new interest rate. For payment adjustments occurring on or after the First P&I Payment Due Date, my monthly payment will be an amount sufficient to repay the unpaid principal that I am expected to owe at the Interest Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Interest Change Date will not be greater than        11.125 % or less than          2.750 %. Thereafter, my interest rate will never be increased or decreased on any single Interest Change Date by more than TWO          percentage point(s) (        2.000 %) from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than        11.125 %.

### (E) Effective Date of Changes

My new interest rate will become effective on each Interest Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Interest Change Date until the amount of my monthly payment changes again.

### (F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5.  BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to the changes.

Form 5507 5/04 (rev. 7/05)
Initials: _____

**Exhibit 3
Page 26 of 33**

Mar 04 11 09:54a     Dinesh Perera       805- 6316     p.11

If I make a partial Prepayment during the period ending with the due date of my last interest only monthly payment, my partial Prepayment will reduce the amount of my monthly payment. If I make a partial Prepayment after the last interest only monthly payment, my partial Prepayment may reduce the amount of my monthly payments beginning with the monthly payment due after the Interest Change Date following the partial Prepayment. After the first Interest Change Date, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of      15     calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be      5.000 % of my overdue payment of interest during the period when my payment is interest only, and of principal and interest after that. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver by Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**Exhibit 3**
**Page 27 of 33**

Mar 04 11 09:55a     Dinesh Perera                    805-  -6316              p.12

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

### (A) UNTIL MY INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION 4 ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT IS DESCRIBED AS FOLLOWS:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

### (B) AFTER MY INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION 4 ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT DESCRIBED IN SECTION 11(A) ABOVE SHALL THEN CEASE TO BE IN EFFECT, AND UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL INSTEAD BE DESCRIBED AS FOLLOWS:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**Exhibit 3**
**Page 28 of 33**

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
JENNIFER MCCANDLESS              -Borrower                                        -Borrower


_____ (Seal)          _____ (Seal)
                                 -Borrower                                        -Borrower


_____ (Seal)          _____ (Seal)
                                 -Borrower                                        -Borrower


_____ (Seal)          _____ (Seal)
                                 -Borrower                                        -Borrower


*[Sign Original Only]*

**Exhibit 3
Page 29 of 33**

## INITIAL INTEREST<sup>SM</sup> ADJUSTABLE RATE RIDER
### (1-Year Treasury Index - Rate Caps)
### (Assumable after Initial Period)

THIS INITIAL INTEREST ADJUSTABLE RATE RIDER is made this 15           day of
DECEMBER  2006    , and is incorporated into and shall be deemed to amend and supplement
the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date
given by the undersigned (the "Borrower") to secure the Borrower's Initial Interest Adjustable
Rate Note (the "Note") to WELLS FARGO BANK, N.A.

(the "Lender") of the same date and covering the property described in the Security
Instrument and located at:
67 ALAMEDA PADRE SERRA, SANTA BARBARA, CA   93103

[Property Address]
THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE
INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE
AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE
TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the
Security Instrument, Borrower and Lender further covenant and agree as follows:
A. INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial interest rate of            6.125%. The Note provides
for interest only payments until the first fully amortizing principal and interest payment due
date (the "First P&I Payment Due Date"), which is the first day of FEBRUARY, 2017
The Note provides for changes in the interest rate and the monthly payments as follows:
4. INTEREST RATE AND MONTHLY PAYMENT CHANGES
(A) Interest Change Dates
The interest rate I will pay may change on the first day of JANUARY, 2017          ,
and may change on that day every 12th month thereafter. Each date on which my interest
rate could change is called an "Interest Change Date."
(B) The Index
Beginning with the first Interest Change Date, my interest rate will be based on an Index.
The "Index" is the weekly average yield on United States Treasury securities adjusted to a
constant maturity of one year, as made available by the Federal Reserve Board. The most
recent Index figure available as of the date 45 days before each Interest Change Date is called
the "Current Index."
If the Index is no longer available, the Note Holder will choose a new index which is
0071652697
MULTISTATE INITIAL INTEREST ADJUSTABLE RATE RIDER - 1-Year Treasury Index
(Assumable after Initial Period) - Single Family - Freddie Mac UNIFORM INSTRUMENT
NMFL #8361 (FM5R) Rev 5/12/2006
VMP-191R (0508)  Form 5107 7/05
Page 1 of 4       Initials:
VMP Mortgage Solutions, Inc.      (800)521-7291

# Exhibit 3
# Page 30 of 33

Mar 04 11 09:56a     Dinesh Perera                          805‑    ‑6316          p.15

based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Interest Change Date, the Note Holder will calculate my new interest rate by adding **TWO AND THREE-QUARTERS**                                        .                       percentage point(s) (                **2.750%**) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below. this rounded amount will be my new interest rate until the next Interest Change Oate.

The Note Holder will then determine the amount of my monthly payment. For payment adjustments occurring before the First P&I Payment Oue Date, my monthly payment will be the amount sufficient to repay all accrued interest each month on the unpaid principal balance at the new interest rate. For payment adjustments occurring on or after the First P&I Payment Due Date, my monthly payment will be an amount sufficient to repay the unpaid principal that I am expected to owe at the Interest Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Interest Change Date will not be greater than           **11.125** % or less than              **2.750** %. Thereafter, my interest rate will never be increased or decreased on any single Interest Change Date by more than **TWO**                                                                           percentage point(s) (         **2.000%**) from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than              **11.125** %.

**(E) Effective Oate of Changes**

My new interest rate will become effective on each Interest Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Interest Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

**1. UNTIL BORROWER'S INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION A ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL BE IN EFFECT AS FOLLOWS:**

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

Initials: _____

VMP®-191R (0508)                         Page 2 of 4                         Form 5107 7/05

**Exhibit 3**
**Page 31 of 33**

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

2. AFTER BORROWER'S INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION A ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT DESCRIBED IN SECTION B1 ABOVE SHALL THEN CEASE TO BE IN EFFECT, AND THE PROVISIONS OF UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL BE AMENDED TO READ AS FOLLOWS:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within

Initials:_____

-191R (0508)            Page 3 of 4            Form 5107 7/05

**Exhibit 3**
**Page 32 of 33**

which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)        _____ (Seal)
JENNIFER MCCANDLESS          -Borrower        DINESH PERERA              -Borrower


_____ (Seal)        _____ (Seal)
                             -Borrower                                   -Borrower


_____ (Seal)        _____ (Seal)
                             -Borrower                                   -Borrower


_____ (Seal)        _____ (Seal)
                             -Borrower                                   -Borrower


-191R (0508)                        Page 4 of 4                     Form 5107 7/05


**Exhibit 3**
**Page 33 of 33**

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| Jennifer McCandless<br>Dinesh Perera<br>67 Alameda Padre Serra, Santa Barbara, CA 93103<br>Santa Barbara CA 93013 | |

TELEPHONE NO.:                          FAX NO.:
ATTORNEY FOR (Name): In Pro Se

SUPERIOR COURT OF CALIFORNIA, COUNTY OF **SANTA BARBARA**
STREET ADDRESS: 1100. Anacapa Street, Santa Barbara, CA. 93103
MAILING ADDRESS:
CITY AND ZIP CODE: Anacapa
BRANCH NAME: Anacapa

**F I L E D**
SUPERIOR COURT of CALIFORNIA
COUNTY of SANTA BARBARA

**MAR 0 3 2011**

GARY M. BLAIR, Executive Officer
BY _____
DENYSE AVILA, Deputy Clerk

CASE NAME:
Jennifer McCandless, Dinesh Perera v. Wells Fargo Bank N.A. ET AL

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| ☑ Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | ☐ Limited<br>(Amount<br>demanded is<br>$25,000 or less) | ☐ Counter     ☐ Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | | **1374299** |
| | | | JUDGE: | |
| | | | DEPT: | |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation |
|---|---|---|
| ☐ Auto (22) | ☐ Breach of contract/warranty (06) | (Cal. Rules of Court, rules 3.400–3.403) |
| ☐ Uninsured motorist (46) | ☐ Rule 3.740 collections (09) | ☐ Antitrust/Trade regulation (03) |
| **Other PI/PD/WD (Personal Injury/Property** | ☐ Other collections (09) | ☐ Construction defect (10) |
| **Damage/Wrongful Death) Tort** | ☐ Insurance coverage (18) | ☐ Mass tort (40) |
| ☐ Asbestos (04) | ☐ Other contract (37) | ☐ Securities litigation (28) |
| ☐ Product liability (24) | **Real Property** | ☐ Environmental/Toxic tort (30) |
| ☐ Medical malpractice (45) | ☐ Eminent domain/inverse | ☐ Insurance coverage claims arising from the |
| ☐ Other PI/PD/WD (23) | condemnation (14) | above listed provisionally complex case |
| **Non-PI/PD/WD (Other) Tort** | ☐ Wrongful eviction (33) | types (41) |
| ☐ Business tort/unfair business practice (07) | ☑ Other real property (26) | **Enforcement of Judgment** |
| ☐ Civil rights (08) | **Unlawful Detainer** | ☐ Enforcement of judgment (20) |
| ☐ Defamation (13) | ☐ Commercial (31) | **Miscellaneous Civil Complaint** |
| ☐ Fraud (16) | ☐ Residential (32) | ☐ RICO (27) |
| ☐ Intellectual property (19) | ☐ Drugs (38) | ☐ Other complaint (not specified above) (42) |
| ☐ Professional negligence (25) | **Judicial Review** | **Miscellaneous Civil Petition** |
| ☐ Other non-PI/PD/WD tort (35) | ☐ Asset forfeiture (05) | ☐ Partnership and corporate governance (21) |
| **Employment** | ☐ Petition re: arbitration award (11) | ☐ Other petition (not specified above) (43) |
| ☐ Wrongful termination (36) | ☐ Writ of mandate (02) | |
| ☐ Other employment (15) | ☐ Other judicial review (39) | |

2. This case ☐ is   ☑ is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties    d. ☐ Large number of witnesses
   b. ☐ Extensive motion practice raising difficult or novel    e. ☐ Coordination with related actions pending in one or more courts
       issues that will be time-consuming to resolve           in other counties, states, or countries, or in a federal court
   c. ☐ Substantial amount of documentary evidence    f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a.☐ monetary   b.☑ nonmonetary; declaratory or injunctive relief   c.☐ punitive
4. Number of causes of action (specify): ONE
5. This case ☐ is   ☑ is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: March 3, 2011

Jennifer McCandless
_____
(TYPE OR PRINT NAME)                                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courtinfo.ca.gov |
|---|---|---|

**Exhibit 4**
**Page 1 of 2**

Case 2:11-cv-04814-GW -RZ   Document 1   Filed 06/07/11   Page 58 of 72   Page ID #:61

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the primary cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)—Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice–Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/ Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment (non-domestic relations)
  Sister State Judgment
  Administrative Agency Award *(not unpaid taxes)*
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-harassment)*
  Mechanics Lien
  Other Commercial Complaint Case *(non-tort/non-complex)*
  Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late Claim
  Other Civil Petition

**Exhibit 4**
**Page 2 of 2**

Recording requested by and
When recorded return to:

Jennifer McCandless
Dinesh Perera
67 Alameda Padre Serra
Santa Barbara CA 93103

Parcel ID: 015-152-02
Instrument Number: 2006-0098213
Loan Number: 0071652697

3
CCW

2011-0013417

Recorded
Official Records | REC FEE     21.00
County of
Santa Barbara | CONFORMED COPY 2.00
Joseph E. Holland

12:43PM 03-Mar-2011 | JB
| Page 1 of 3

**FILED**
SUPERIOR COURT of CALIFORNIA
COUNTY of SANTA BARBARA

MAR 03 2011

GARY M. BLAIR, Executive Officer
BY _____
JOSEPH GARNICA, Deputy Clerk

Space Above This Line Is For Recorder's Use Only

### IN THE SUPERIOR COURT OF CALIFORNIA
### IN AND FOR SANTA BARBARA COUNTY, STATE OF CALIFORNIA

| Jennifer McCandless | CASE NO.: 1374299 |
|---|---|
| Dinesh Perera | |
| 67 Alameda Padre Serra | NOTICE OF PENDING ACTION |
| Santa Barbara CA 93103 | LIS PENDENS |
| Plaintiff, | |
| v. | NOTICE OF STAY AND ADVERSE CLAIM |
| Well Fargo Bank N.A. | |
| First American Trustee Servicing Solutions | |
| LLC    (Notice to Agents is Notice to | |
| Principles | |
| Notice to Principles is Notice to Agents) | |
| Defendant. | |

### NOTICE OF LIS PENDENS
### NOTICE OF STAY AND ADVERSE CLAIM

TO ALL PERSONS that an action has been commenced in the above – entitled Court on a complaint, SUIT TO QUIET TITLE CASE NUMBER:
of Jennifer McCandless and Dinesh Perera  v. Well Fargo Bank N.A., First American Trustee Servicing Solutions LLC.

This action affects title to real property more particularly described as follows:

See Legal Description Attachment: Exhibit A

THE ADDRESS ON SAID PROPERTY: 67 Alameda Padre Serra Santa Barbara CA 93103

_____  Date 3·3·2011      _____  Date 3·3·11
Jennifer McCandless, Propia Persona      Dinesh Perera, Propia Persona

# Exhibit 5
# Page 1 of 5

File No: 04001912

# EXHIBIT "A"

All that certain real property situated in the County of Santa Barbara, State of California, described as follows:

That portion of Pueblo Lot No. 74 of the Outside Pueblo Lands of the City of Santa, in the City of Santa Barbara, Barbara, County of Santa Barbara, State of California, described as follows:

Beginning at a cross cut on the pavement in the center line of Alameda Padre Serra, set by George A. Miller, Registered Engineer #1122, from which a ¾ inch survey pipe set on the Southeasterly line of said road bears South 24°55' East, 30.23 feet distant, said point of beginning being the Northwesterly corner of the tract of land described in the deed from Frank M. Gallaher to Frederick H. Cowles, et al., filed November 20, 1935 in the office of the Registrar of Titles as Torrens Document No. 1231, and a duplicate thereof recorded November 20, 1935 in Book 343, Page 241 of Official Records, records of said County;

thence along the center line of said Alameda Padre Serra, South 57°59' West, 87.51 feet, more or less, to the most Westerly corner of the tract of land described in the deed to Roy R. Kennedy, et ux., filed September 23, 1947 in the office of the Registrar of Titles as Torrens Document No. 2209, and a duplicate thereof recorded September 23, 1947 in Book 744, Page 450 of Official Records, records of said County, said point being the true point of beginning of the property herein described;

thence continuing along the center line of Alameda Padre Serra, South 57°59' West, 84.07 feet, more or less, to the most Northerly corner of the tract of land described in the deed to Samuel Gerson, et ux., registered August 2, 1948 in the office of the said Registrar of Titles as Torrens Document No. 2406, a duplicate thereof recorded August 2, 1948 in Book 798, Page 35 of Official Records, records of said County;

thence along the Northeasterly line of said Gerson Tract of land, South 29°01' East, 208.69 feet to the most Easterly corner of said Gerson Tract of land, said point being a point in the Southeasterly line of the tract of land described in the deed to John Bjornen, et ux., registered October 8, 1945 in the office of the said Registrar of Titles as Torrens Document No. 1890 and a duplicate thereof recorded October 8, 1945 in Book 668, Page 148 of Official Records, records of said County;

thence along the Southeasterly line of said Bjornen Tract of land, North 57°59' East, 72.55 feet to the most Southerly corner of said Kennedy Tract of land above referred to;

thence along the Southwesterly line of said Kennedy Tract of land, North 25°52' West, 209.61 feet to the true point of beginning.

**Exhibit 5
Page 2 of 5**

File No: 04001912

Excepting therefrom that portion conveyed to the City of Santa Barbara by deed recorded December 20, 1921 as Instrument No. 7082 in Book 202, Page 189 of Deeds.

Said land is shown with other lands on a map of survey filed in Book 29, Page 34 of Record of Surveys, in the office of the County Recorder of said County.

Assessor's Parcel Number:     015-152-02

**Exhibit 5**

**Page 3 of 5**

This is a true certified copy of the
original document on file or of record in
my office. It bears the seal and
signature, imprinted in purple ink of the
County Clerk, Recorder and Assessor.

*Joseph E. Holland*

COUNTY CLERK, RECORDER AND ASSESSOR, SANTA BARBARA CALIFORNIA
DATE: MAR 0 3 2011    BY DEPUTY:

**Exhibit 5
Page 4 of 5**



Jennifer McCandless
67 Alameda Padre Serra
Santa Barbara, CA 93103

RETURN RECEIPT REQUESTED

U.S. POSTAGE
PAID
SANTA BARBARA, CA
93103
MAR 08 '11
AMOUNT
$5.54
00050848-07

95833

CERTIFIED MAIL

7010 1870 0000 5648 3400

CORPORATION SERVICE COMPANY
CSC LAWYERS INCORPORATING SERVICE
2730 GATEWAY OAKS DR. Suite 100
SACRAMENTO, CA 95833

95833363503

**Exhibit 5**
**Page 5 of 5**

1   Jennifer McCandless

2   Dinesh Perera

3   67 Alemeda Padra Serra

4   Santa Barbara CA 93103

5   In Pro Per

6                    IN THE SUPERIOR COURT OF CALIFORNIA

7                    IN AND FOR SANTA BARBARA COUNTY

8

9   Jennifer McCandless,

10  Dinesh Perera                          CASE NO.: 1374299

11          Plaintiff,                     **PLAINTIFFS OPPOSITION AND OBJETION**

12      v.                                 **TO NON-MONETARY STATUS BY**

13  Wells Fargo Bank N.A.                  **DEFENDANT FIRST AMERICAN TRUSTEE**

14  First American Trustee Servicing Solutions,   **SERVICING SOLUTIONS, LLC**

15  LLC

16  and Does 1 through 50                  Judge: Denise Le Bellefeuille

17          Defendant,

18

19

20

21          Plaintiffs Jennifer McCandless and Dinesh Perera (hereinafter referred to collectively as "Plaintiffs")

22  object to the Declaration of Non-Monetary Status ("DNS") by Defendant First American Trustee Servicing

23  Solutions, LLC ("First American") pursuant to Code of Civil Procedure §2924l.

24          Plaintiffs filed their Complaint to quiet title on the property located at 67 Alameda Padre Serra,

25  Santa Barbara, California 93013 (the "Property") on March 3, 2010 in the Santa Barbara County Superior

26  Court naming First American as a defendant. First American served the DNS, by mail, on March 14, 2011.

27  ////

28  ////

# Exhibit 6
# Page 1 of 2

Pursuant to CCP §2924l, Plaintiffs hereby object to the DNS on grounds that Defendant First American has been named by Wells Fargo Bank N.A. as trustee and charged with conducting the foreclosure sale and should be a party to the suit.  Plaintiffs rights will be prejudice if First American's DNS is sustained as the foreclosure sale of the Property may proceed if First American does not remain a party to this action.

For the foregoing reasons, Plaintiffs respectfully request that the Court sustain this Objection.


I, declare under penalty of perjury under the laws of the State of California that the foregoing is true and accurate. Executed on the ___2___ day of April 2011 in Santa Barbara CA.


_____
Jennifer McCandless, Plaintiff

_____
Dinesh Perera, Plaintiff

**Exhibit 6**
**Page 2 of 2**

1  Jennifer McCandless

2  Dinesh Perera

3  67 Alemeda Padra Serra

4  Santa Barbara CA 93103

5  **In Pro Per**

6                    IN THE SUPERIOR COURT OF CALIFORNIA

7                    IN AND FOR SANTA BARBARA COUNTY

8

| | |
|---|---|
| 9  Jennifer McCandless, | |
| 10  Dinesh Perera | CASE NO.: 1374299 |
| 11             Plaintiff, | **NOTICE OF CASE MANAGEMENT** |
| 12    v. | **CONFERENCE** |
| 13  Wells Fargo Bank N.A. | |
| 14  First American Trustee Servicing Solutions, | Judge: Denise Le Bellefeuille |
| 15  LLC | |
| 16  and Does 1 through 50 | |
| 17             Defendant, | |

18

19

20  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

21        PLEASE TAKE NOTICE that the above captioned case has been assigned to Judge Denise Le

22  Bellefeuille for all purposes, including trial.

23        PLEASE TAKE FURTHER NOTICE that on July 7, 2011 at 8:30 a.m. in Department SB6 of the

24  above captioned Court located at 1100 Anacapa Street, Santa Barbara, California 93101, the Case

25  Management Conference shall take place. A true and correct copy of the Order & Notice of Case

26  Assignment and Notice of Case Management Conference is attached hereto.

27  ////

28  ////

      ////

**Exhibit 7
Page 1 of 3**

1   ////

2   Executed on the _____ day of April 2011 in Santa Barbara CA.

3

4   _____

5   Jennifer McCandless, Plaintiff

6

7   _____

8   Dinesh Perera, Plaintiff

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Exhibit 7**
**Page 2 of 3**

| | FOR COURT USE ONLY | F |
|---|---|---|
| | | DE |
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA BARBARA** | **FILED** | CA |
| STREET ADDRESS:  1100 Anacapa Street | SUPERIOR COURT of CALIFORNIA COUNTY of SANTA BARBARA | |
| MAILING ADDRESS: | | |
| CITY AND ZIP CODE:  Santa Barbara, California  93101 | **MAR 2 8 2011** | |
| BRANCH NAME:  Santa Barbara-Anacapa Division | | |
| | GARY M. BLAIR, Executive Officer | |
| Caption: | BY _____ April Garcia ___ | |
| **Jennifer McCandles et al vs Wells Fargo Bank NA et al** | APRIL GARCIA, Deputy Clerk | |

| **ORDER & NOTICE OF CASE ASSIGNMENT**<br>**NOTICE OF CASE MANAGEMENT CONFERENCE** | CASE NUMBER:<br>**1374299** |
|---|---|

The above case is hereby assigned to Judge Denise  de Bellefeuille  for ALL purposes, including trial.  All future
matters, including ex-parte matters, are to be scheduled with the assigned judge.  Counsel shall include the name of the
assigned judge in the caption of every document filed with the court.  The above-entitled case is hereby ordered set for:

CASE MANAGEMENT CONFERENCE on **7/7/11**
at  8:30 am in Dept. **SB6**  at the court address above.

PLAINTIFF SHALL GIVE NOTICE of this assignment to ALL parties brought into the case, including but not limited to
defendants, cross-defendants and intervenors.  A Proof of Service of this ORDER & NOTICE OF CASE ASSIGNMENT is
to be filed with the Court within five (5) working days after service.  Failure to give notice and file proof thereof or failure to
appear may result in the imposition of sanctions.  Pursuant to California Rule of Court 3.725, no later than fifteen (15)
calendar days before the date set for the Case Management Conference, each party must file a Case Management
Statement (Judicial Council form CM110).  In lieu of each party filing a separate Case Management Statement, any two or
more parties may file a joint statement.

At the Court's discretion counsel, parties and insurance representatives (if any) with full settlement authority may be
required to attend a CADRe Information Meeting within ten (10) days of the Conference date.

Dated:   03/28/11

B- E Hill

JUDGE OF THE SUPERIOR COURT
**BRIAN E. HILL**

---

**CLERK'S CERTIFICATE OF MAILING**

I certify that I am not a party of this action and that a true copy of the foregoing was mailed first class, postage
prepaid in a sealed envelope addressed as shown, and that the mailing of the foregoing and execution of this certificate
occurred at Santa Barbara, California, on  03/28/11

Jennifer  McCandless
67 Alameda Padre Serra
Santa Barbara, CA 93103

Gary M. Blair, Executive Officer                    By _____ , Deputy

---

**ORDER & NOTICE OF CASE ASSIGNMENT**
**NOTICE OF CASE MANAGEMENT CONFERENCE**       Local Rule 1309
Cal. Rules of Court, Rule 202

# Exhibit 7
# Page 3 of 3

1  WRIGHT, FINLAY & ZAK, LLP
   T. Robert Finlay, Esq., SBN 167280
2  Nicole K. Neff, Esq., SBN 257964
   4665 MacArthur Court, Suite 280
3  Newport Beach, CA 92660 *(McCandless-Perera/Declaration of Non-Monetary Status)*
   Tel. (949) 477-5050; Fax (949) 477-9200
4  Rfinlay@wrightlegal.net; nneff@wrightlegal.net;
5
   Attorneys for Defendant,
6  FIRST AMERICAN TRUSTEE SERVICING SOLUTIONS, LLC
7
                    SUPERIOR COURT FOR THE STATE OF CALIFORNIA
8
                              COUNTY OF SANTA BARBARA
9
10
11 JENNIFER MCCANDLESS, DINESH          ) Case No.: 1374299
   PERERA,                              )
12                                      )
                          PLAINTIFF,    ) **DEFENDANT FIRST AMERICAN**
13                                      ) **TRUSTEE SERVICING SOLUTIONS,**
                                        ) **LLC'S JOINDER TO DEMURRER OF**
14      VS.                             ) **DEFENDANT WELLS FARGO BANK,**
                                        ) **N.A. TO PLAINTIFF'S COMPLAINT**
15 WELLS FARGO BANK, N.A.; AND FIRST    )
16 AMERICAN TRUSTEE SERVICING           ) Hearing
   SOLUTIONS, LLC, AND DOES 1 through 50, ) Date:     May 19, 2011
17             DEFENDANT.               ) Time:      9:30 a.m.
                                        ) Dept.:     6
18                                      )
                                        )
19                                      ) Complaint filed:  April 4, 2011
                                        )
20                                      )
                                        )
21                                      )
                                        )
22                                      )
                                        )
23                                      )
                                        )
24                                      )
                                        )
25                                      )
                                        )
26                                      )
                                        )
27                                      )
28

                                **Exhibit 8**
                         1      **Page 1 of 4**
                    JOINDER TO DEMURRER

**TO ALL PARTIES AND THEIR ATTORNEY OF RECORD, IF ANY:**

**PLEASE TAKE NOTICE** that Defendant FIRST AMERICAN TRUSTEE

SERVICING SOLUTIONS, LLC ("First American") hereby joins in the Demurrer of

Defendant WELLS FARGO BANK, N.A. ("Moving Defendant") to the Complaint filed by

Plaintiffs Jennifer McCandless and Dinesh Perera, ("Plaintiffs"), set to be heard on May 19,

2011, at 9:30 a.m., in Department 6 of the above-entitled court, located at 1100 Anacapa Street,

Santa Barbara, California.

First American hereby joins Defendant's Demurrer to Plaintiffs' Complaint for the

reasons set forth in the Demurrer.

Please take further notice that First American hereby adopts and incorporates by

reference as though set forth in full herein, the Notice of Demurrer and Demurrer, filed by

Moving Defendant on or about April 4, 2011.

Respectfully submitted,

WRIGHT, FINLAY & ZAK, LLP

Dated: April 6, 2011                    By: _____

T. Robert Finlay, Esq.
Nicole K. Neff, Esq.
Attorneys for Defendant,
FIRST AMERICAN TRUSTEE
SERVICING SOLUTIONS, LLC

**Exhibit 8**
**Page 2 of 4**

## PROOF OF SERVICE

I, Gretchen Grant, declare as follows:

I am employed in the County of Orange, State of California. I am over the age of eighteen (18) and not a party to the within action. My business address is 4665 MacArthur Court, Suite 280, Newport Beach, CA 92660. I am readily familiar with the practices of Wright, Finlay & Zak, LLP, for collection and processing of correspondence for mailing with the United States Postal Service. Such correspondence is deposited with the United States Postal Service the same day in the ordinary course of business.

On April 7, 2011, I served the within **DEFENDANT FIRST AMERICAN TRUSTEE SERVICING SOLUTIONS, LLC'S JOINDER TO DEMURRER OF DEFENDANT WELLS FARGO BANK, N.A. TO PLAINTIFF'S COMPLAINT** on all interested parties in this action as follows:

[X]     by placing [ ] the original [X] a true copy thereof enclosed in sealed envelope(s) addressed as follows:

Jennifer McCandless, Dniesh Perera
67 Alameda Padre Serra
Santa Barbara, CA 93102
Plaintiffs In Pro Per

Dean Christopherson, Esq.
Dawe & Christopherson LLP
1350 Treat Boulevard, Suite 420
Walnut Creek, CA 94597
925-256-6677; 925-256-6678
Attorneys for Defendant Wells Fargo Bank

[X ]    (BY MAIL SERVICE) I placed such envelope(s) for collection to be mailed on this date following ordinary business practices.

[  ]    (BY PERSONAL SERVICE) I caused to be delivered such envelope by hand delivered to the office of the addressee.

[  ]    (BY FACSIMILE) The facsimile machine I used, with telephone no. (949) 477-9200, complied with California Rules of Court, Rule 2003, and no error was reported by the machine. Pursuant to California Rules of Court, Rule 2006(d), I caused the machine to print a transmission record of the transmission, a copy of which is attached to the original Proof of Service.

[ ]     (BY NORCO DELIVERY SERVICES) I placed true and correct copies of thereof enclosed in a package designated by Norco Delivery Services with the delivery fees provided for.

# Exhibit 8
# Page 3 of 4

1

1   [X]    (State) I declare under penalty of perjury under the laws of the State of California that the

2          foregoing is true and correct.

3          Executed on April 7, 2011, at Newport Beach, California.

4

5                   Gretchen Grant

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Exhibit 8**
**Page 4 of 4**

2

PROOF OF SERVICE