Dean Christopherson (SBN 121723)
**DAWE & CHRISTOPHERSON LLP**
1350 Treat Boulevard, Suite 420
Walnut Creek, California 94597
telephone: (925)256-6677
facsimile: (925)256-6678
email: dac@calaw.com

Attorneys for Defendant Wells Fargo Bank, N.A.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JENNIFER MCCANDLESS, DINESH PERERA,** | **No. CV11-4814 GW (RZx)** |
| **PLAINTIFFS,** | **NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES, DECLARATION RE PRE-FILING CONFERENCE [LOCAL RULE 7-3], REQUEST FOR JUDICIAL NOTICE** |
| VS. | |
| **WELLS FARGO BANK, N.A., FIRST AMERICAN TRUSTEE SERVICING SOLUTIONS LLC, ALL PERSONS UNKNOWN, claiming any legal or equitable right, title, estate, lien, or interest in the property described in the complaint adverse to Plaintiffs' title, or any cloud on Plaintiffs' title thereto;** | FRCP 12(b)(6) |
| | Date:   August 15, 2011 |
| | Time:   8:30 a.m. |
| | Judge:  Judge George H. Wu |
| **DEFENDANTS.** | Courtroom: 10 |

TO PLAINTIFFS *PRO SE*:

PLEASE TAKE NOTICE that on August 15, 2011, at 8:30 a.m., in Courtroom 10 of the

above-entitled Court, located at 312 North Spring Street, Los Angeles, California, Defendant

Wells Fargo Bank, N.A. will move, and hereby does move, the Court for an order dismissing

each of the claims asserted in this First Amended Complaint filed by Plaintiffs Jennifer

McCandless and Dinesh Perera, as follows:

•First Claim for Common Law Fraud Fails to State a Claim for Which Relief can be

Granted – FRCP 12(b)(6);

/ / /

1    •Second Claim for Constructive Fraud-Breach of Contract Fails to State a Claim for

2    Which Relief can be Granted – FRCP 12(b)(6);

3    •Third Claim for Fraudulent Conversion of Real Property Fails to State a Claim for

4    Which Relief can be Granted – FRCP 12(b)(6); and

5    •Fourth Claim for Violation of the Federal Fair Debt Collection Practice Act Fails to

6    State a Claim for Which Relief can be Granted – FRCP 12(b)(6).

7        This motion is based upon this notice of motion and motion, the following Memorandum

8    of Points and Authorities, and Request for Judicial Notice, and such other and further matter as

9    may be presented to the Court at or before the time set for the hearing on this matter.

10                                   DAWE & CHRISTOPHERSON LLP

11

12

13    Dated: June 13, 2011

14                                   Dean A. Christopherson
                                     Attorneys for Defendant Wells Fargo Bank, N.A.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **MEMORANDUM OF POINTS AND AUTHORITIES**

2    Table of Contents                                               Page no.

3    **I. BRIEF STATEMENT OF CASE** ............................................. 1

4    **II. STATEMENT OF RELIEF SOUGHT** ........................................ 1

5    **III.  ANALYSIS** .......................................................... 2

6        **A. Legal Standard for Granting Motion to Dismiss.** ........................ 2

7        **B. Analysis of Individual Claims.** ....................................... 3

8        1. First Claim for Common Law Fraud Fails to State a Claim for Which
9        Relief can be Granted – FRCP 12(b)(6). ...................................... 3

            **a. Substantive Insufficiency of Fraud Claim.** ........................ 3
10
11              (i) *There Is No Trust Established for the Benefit of the Plaintiffs.* ...... 3

12              (ii) *Wells Fargo's Lack of Execution of Note and Deed of Trust.* ...... 4

13              (iii) *Failure to Disclosure Specific Federal Statutes Which Govern
                Transaction.* ................................................. 5

14              (iv) *Allegations re First American.* ............................... 5

15          **b. Procedural Insufficiency – Claim not Pled with Specificity.** ........... 6

16      2. Second Claim for Constructive Fraud-Breach of Contract Fails to State a
17      Claim for Which Relief can be Granted – FRCP 12(b)(6). ...................... 6

        3. Third Claim for Fraudulent Conversion of Real Property Fails to State a
18      Claim for Which Relief can be Granted – FRCP 12(b)(6). ...................... 7

19      4. Fourth Claim for Violation of the Federal Fair Debt Collection Practice Act
        Fails to State a Claim for Which Relief can be Granted – FRCP 12(b)(6). ........... 8
20

21    **IV. CONCLUSION** ........................................................ 9

22    **DECLARATION RE PRE-FILING CONFERENCE [LOCAL RULE 7-3]** ............. 9

23    **REQUEST FOR JUDICIAL NOTICE** ...................................... 10

24

25

26

27

28

Defendant Wells Fargo Bank, N.A. ("Wells Fargo") submits the following as the memorandum of points and authorities in support of its Motion to Dismiss the four claims asserted in the First Amended Complaint ("FAC") filed by Plaintiffs Jennifer McCandless and Dinesh Perera ("Plaintiffs").

## I. BRIEF STATEMENT OF CASE

This action arises out of a mortgage loan extended to Plaintiffs by Wells Fargo in December 2006, which was used to purchase a residence located at 67 Alameda Padre Serra, Santa Barbara, California (the "Property").[1]

The home is in foreclosure, with Notices of Default and Sale generated, and a Substitution of Trustee recorded.[2]  As of the date on which this motion is filed, the property has not been sold at a trustee's sale.

In their FAC, Plaintiffs tell a convoluted and legally insufficient story in an attempt to paint this foreclosure as wrongful.  Among their allegations are the following:

- they believed that the Deed of Trust created a "trust" for their benefit [FAC, ¶14];
- while the Deed of Trust recites that it is governed by federal law, it does not specify which law or laws are implicated [FAC, ¶15];
- it is improper for co-defendant First American Trustee' Servicing Solutions ("First American") to be involved in the foreclosure as it is not a party to the transaction [FAC, ¶¶16, 23-24]; and
- the note and deed of trust is unlawful and unenforceable as it is not signed by Wells Fargo [FAC, ¶20].

None of these things provides any basis for relief, and the claims in this action should be dismissed.

## II. STATEMENT OF RELIEF SOUGHT

By this motion, Wells Fargo seeks dismissal of each of the four claims asserted against it in the FAC.

///

---

[1] See Deed of Trust, a true and correct copy of which is attached to the Request for Judicial Notice ("RJN") as Exhibit 1. See also, FAC, ¶13.

[2] See RJN, Exhibits 2 - 4.

1

### III. ANALYSIS

2

**A. Legal Standard for Granting Motion to Dismiss.**

3   Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss should be granted

4   where the complaint fails to state a "cognizable legal theory" or lacks "sufficient facts alleged

5   under a cognizable legal theory." *Balistieri v. Pacifica Police Dept.* (9th Cir. – 1990) 901 F.2d

6   696, 699. In reviewing the Complaint, the Court should not accept as true unwarranted

7   deductions of fact, legal characterizations, conclusory allegations or unreasonable inferences.

8   *Western Mining Council v. Watt* (9th Cir. – 1981) 643 F.2d 618, 624; these constitute much of the

9   text set forth in Plaintiffs' FAC.

10   In *Bell Atlantic Corporation v. Twombly* (2007) 550 U.S. 544, 555-556, 127 S.Ct. 1955,

11   1965, the Supreme Court extended the nature and extent of a Plaintiffs' pleading obligations,

12   making clear that conclusory or unsupported allegations are insufficient in the face of a motion to

13   dismiss:

14   "While a complaint attacked by a Rule 12(b)(6) a motion to dismiss does not need
detailed factual allegations, ibid.; *Sanjuan v. American Bd. of Psychiatry and Neurology,*

15   *Inc.,* 40 F.3d 247, 251 (C.A.7 1994), *a plaintiff's obligation to provide the 'grounds' of
his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic*

16   *recitation of the elements of a cause of action will not do,* see *Papasan v. Allain,* 478 U.S.
265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to dismiss, courts 'are not

17   bound to accept as true a legal conclusion couched as a factual allegation'). *Factual
allegations must be enough to raise a right to relief above the speculative level,* see 5 C.

18   Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235-236 (3d ed.2004)
(hereinafter Wright & Miller) ('*[T]he pleading must contain something more . . . than . . .*

19   *a statement of facts that merely creates a suspicion [of] a legally cognizable right of
action' [fn 3 omitted] on the ASSUMPTION THAT ALL THE allegations in the complaint*

20   *are true (even if doubtful in fact),* see, e.g., *Swierkiewicz v. Sorema N. A.,* 534 U.S. 506,
508, n. 1, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) . . ." [Emphasis added.]

21

22   In the context of a Motion to Dismiss, the Court may also properly consider documents

23   referenced in the Complaint, but not attached, *Branch v. Tunnell* (9th Cir. – 1994) 14 F.3d 449,

24   454, or which are subject to Judicial Notice under Federal Rule of Evidence 201, *MGIC*

25   *Indemnity Corporation v. Weisman* (9th Cir. – 1986) 803 F.2d 500, 506. Accordingly, the Deed

26   of Trust and other foreclosure documents which are attached to the following Request for

27   Judicial Notice may be considered by the Court in ruling on this motion.

28   / / /

1    As shown below, under the *Twombly* standard, none of the claims challenged by this
2    motion are legally sufficient, and each should be dismissed.

3    **B. Analysis of Individual Claims**.

4         1. First Claim for Common Law Fraud Fails to State a Claim for Which Relief can be
5         Granted – FRCP 12(b)(6).

6    As noted above, for their fraud claim, Plaintiffs assert that they were somehow defrauded
7    as the result of Wells Fargo using the terms "Trust" in the Deed of Trust, by Wells Fargo not
8    signing the note and deed of trust, and by its referencing the transaction being governed by
9    federal law, without specifying the particular laws at issue.

10        The claim is insufficient, both as the substantive claims are without merit, and as the
11   claim is not pled with the requisite specificity to satisfy FRCP 9(b), all as shown below.

12        **a. Substantive Insufficiency of Fraud Claim.**

13        Of course, the elements of a claim for fraud are: (1) that Defendants represented to
14   Plaintiffs that an important fact was true, (2) that Defendants' representation was false, (3) that
15   Defendants knew the representation was false when they made it, or that they made the
16   representation recklessly and without regard for its truth, (4) that Defendants intended that
17   Plaintiffs rely on the representation, (5) that Plaintiffs reasonably relied on Defendants'
18   representation, (6) that Plaintiffs were harmed, and (7) that Plaintiff's reliance on Defendants'
19   representation was a substantial factor in causing their harm.  CACI 1900.

20        (i) *There Is No Trust Established for the Benefit of the Plaintiffs.*

21        Plaintiffs assert that by seeing word involving "trust," they believed that the Deed of
22   Trust created an actual trust  for their benefit, and that they relied upon this presumption in
23   executing the loan documents. [FAC, ¶14].  However, they also aver that the document "is not in
24   anyway (sic.) constructed like, or instituted like a true trust." [Id.].

25        In consideration of the elements above, it is clear that attempting to forge a claim for
26   fraud based upon these allegations is certainly attempting to "place a square peg in a round hole."
27   These allegations are not susceptible to showing that the statements made were false.  What
28   in the language of the deed of trust is a representation of an untrue fact?  There is no statement

1  that the document creates a trust for the benefit of Plaintiffs, rather that was simply what

2  Plaintiffs inferred.  And there is no allegation that the "false statement" was made with intent to

3  defraud.  If this was so, each and every secured real property lending transaction would be

4  subject to the same claim.  Finally, there is no showing that the Plaintiffs were harmed by the

5  reference to "trust."  The elements of fraud based upon this claim are neither met, nor capable of

6  being met.

7       Furthermore, it has been held that a deed of trust does not create a trust in the ordinary

8  sense, and no fiduciary obligations flow to the borrowers thereunder.

> "A trustee under a deed of trust has neither the powers nor the obligations of a strict trustee; rather, he serves as a kind of common agent for the trustor and the beneficiary. (3 Witkin, *Summary of Cal. Law* (9th ed. 1987) Secured Transactions in Real Property, § 7, p. 520; *Stephens, Partain & Cunningham v. Hollis* (1987) 196 Cal.App.3d 948, 955, 242 Cal.Rptr. 251 (Hollis).) His agency is a passive one, for the limited purpose of conducting a sale in the event of the trustor's default or reconveying the property upon satisfaction of the debt. (4 Miller & Starr, op. cit. supra, § 9.3, p. 16; see *Fleisher v. Continental Auxiliary Co.* (1963) 215 Cal.App.2d 136, 139, 30 Cal.Rptr. 137.) Often the trustee is a title company, which is unaware of its selection as trustee and has no knowledge of either the transaction or the identity of the beneficiary. (4 Miller & Starr, op. cit. supra, p. 15.) Consequently, 'The use of the term 'trustee' in the deed of trust is unfortunate and misleading. The 'trustee' of a deed of trust is not a trustee at all in a technical or strict sense. . . . He does not assume the obligations which are imposed on a trustee by operation of law, and the statutes applicable to trustees of express trusts do not apply to deeds of trust. The trustee of a deed of trust does not possess the personal confidence for the benefit of another required for a true trust relationship.' (4 Miller & Starr, op. cit. supra, at pp. 13–14, emphasis added; see also *Hollis*, supra, 196 Cal.App.3d at p. 955–956, 242 Cal.Rptr. 251, holding that trustee may acquire the property at a foreclosure sale for his own benefit.) A trustee therefore, while an agent for both the beneficiary and the trustor, does not stand in a fiduciary relationship to either. *(Baron v. Colonial Mortgage Service Co.* (1980) 111 Cal.App.3d 316, 323, 168 Cal.Rptr. 450.) [fn. omitted.] *Hatch v. Collins* (1990) 225 Cal.App.3d 1104, 1111-1112.

21       For these reasons, the fraud claim based upon the use of the word "trust" in the Deed of

22  Trust is without merit and must be dismissed.

23       (ii) *Wells Fargo's Lack of Execution of Note and Deed of Trust.*

24       Plaintiffs next attempt to fashion a fraud claim out of the assertion that Wells Fargo did

25  not sign the note and deed of trust [FAC, ¶¶14, 20].  Just like the discussion of the claim based

26  upon the use of the word "trust" above, this is insufficient to impose liability on Wells Fargo.

27       For it is apparent that a failure to sign a document is not a "representation" at all.  There

28  is no signature line for Wells Fargo to sign, so there could not be an implication that it would do

1  so raised by Plaintiffs.  There can be no reliance on something not uttered, nor can there be any

2  harm.  Therefore, this claim is also substantively insufficient.[3]

3          (iii) *Failure to Disclosure Specific Federal Statutes Which Govern Transaction.*

4          Plaintiffs next urge that Wells Fargo has defrauded them by a reference in the documents

5  to the underlying transaction being governed by federal statute regulation or rule, without

6  identifying which are laws implicated.

7          This statement at issue is simply the choice of law provision found in Section 16 of the

8  Deed of Trust:[4]

9          "This Security Instrument shall be governed by federal law and the law of the jurisdiction
          in which the Property is located. . ."

10

11         Plaintiffs have articulated no basis upon which this statement is false, or how they have

12  been harmed as the result of the same.  Given this, the elements of this cause of action are not

13  well pled, and the claim based upon this asserted "misrepresentation" must be dismissed.

14          (iv) *Allegations re First American.*

15          Wells Fargo does not address the allegations regarding First American, [FAC, ¶¶16, 23,

16  24 and 25] or any fraud which may be predicated upon these allegations, as it is not directed

---

17  [3]Wells Fargo notes that, in the middle of their fraud claim, Plaintiffs assert the following:

18  "Plaintiffs will demand absolutely that Defendant WELLS FARGO BANK, N.A., produce this original
19  allege agreement or contract to the Court." [FAC, ¶22].

20      Wells Fargo presumes that Plaintiffs may intend to make reference to an "allonge," rather than an "allege,"
    but notes that there is none as the note has not been assigned or endorsed to another.

21
        Furthermore, the "produce the note" strategy has been rejected roundly, and often, and provides no basis for
22  relief here:

23      "Finally, any claim by plaintiff that the foreclosure proceedings were unlawful because none of the
        defendants were the holders of the note, would also be frivolous. 'Under California Civil Code § 2924 et
24      seq., possessing the note is irrelevant to nonjudicial foreclosures. See *Sicairos v. NDEX West, LLC*, 2009
        WL 385855 (S.D.Cal.2009) (under §2924, no party needs to physically possess the promissory note).
25      Therefore, plaintiff's claims for wrongful foreclosure and breach of the covenant of good faith and fair
        dealing, predicated on the 'holder in due course' claim, cannot lie.' *Vaughn v. CitiMortgage Inc.*, No. CIV
26      10–1463 MCE KJM PS, 2010 WL 4069359, at *1 (E.D.Cal. Oct.18, 2010). See also *Nool v. HomeQ
        Servicing*, 653 F.Supp.2d 1047, 1053 (E.D.Cal.2009) ('It is well-established that non-judicial foreclosures
27      can be commenced without producing the original promissory note.);*Saldate [v. Wilshire Credit Corp.]*,
        711 F.Supp.2d at 1139.
28              *Marty v. Wells Fargo Bank* (E.D. Cal. – 2011) 2011 WL 1103405, 6.

    [4]See Deed of Trust, RJN, Exhibit 1, page 11.

1    against this demurring defendant.

2        **b. Procedural Insufficiency – Claim not Pled with Specificity.**

3        In addition to the substantive insufficiencies discussed above, the claim for fraud is

4    procedurally insufficient as it is not pled with specificity as required by Federal Rule 9(b).

5        "In complaints alleging fraud, however, the heightened pleading standards of
     Fed.R.Civ.P. 9(b) apply. This rule requires averments of fraud or inequitable conduct to
6        be 'stated with particularity.' Fed.R.Civ.P. 9(b). Rule 9(b) does not necessitate pleading
     of detailed evidentiary matter. Nonetheless, mere conclusory allegations of fraud are
7        insufficient. *Moore v. Kayport Package Express*, 885 F.2d 531, 540 (9th Cir.1989). The
     plaintiff must include statements regarding the time, place, and nature of the alleged
8        fraudulent activities, and must specifically identify what was misrepresented or concealed
     so as to give the opposing party notice of the particular conduct which is alleged to
9        constitute the fraud. Id. Merely making general conclusory allegations of fraud, and then
     reciting a list of neutral facts, is not sufficient. *Semegen v. Weidner*, 780 F.2d 727, 731
10       (9th Cir.1985).
         *Stack v. Lobo* ( N.D. Cal. – 1995) 903 F.Supp. 1361, 1367 [Emphasis added.]

11

12       Here, the first claim fails to satisfy these requirements, providing a second basis upon

13   which to dismiss the claim.

14       2. Second Claim for Constructive Fraud-Breach of Contract Fails to State a Claim for

15   Which Relief can be Granted – FRCP 12(b)(6).

16       This claim is based upon nothing more than the following conclusions:

17       "Plaintiffs re alleged (sic.) and incorporate by reference all paragraphs above, as though
     fully set forth in this case of action. Res ipsa loquitur. For Defendants conduct in the
18       unlawful construction of, and the unlawful execution of the Promissory Note and Deed of
     Trust agreements, the alleged agreements are legally unenforceable." [FAC, ¶26].

19

20       There is absolutely nothing new in this claim that is not raised above.

21       Further, a claim for constructive fraud must be based upon a showing of a confidential

22   relationship between Plaintiffs and the party charged:

23       ". . .by statute, "[c]onstructive fraud consists: [¶] 1. In any breach of duty which, without
     an actually fraudulent intent, gains an advantage to the person in fault, or anyone claiming
24       under him, by misleading another to his prejudice, or to the prejudice of anyone claiming
     under him; or, [¶] 2. In any such act or omission as the law specially declares to be
25       fraudulent, without respect to actual fraud." (Civ.Code, § 1573, italics added.)
     Constructive fraud 'arises on a breach of duty by one in a confidential or fiduciary
26       relationship to another which induces justifiable reliance by the latter to his prejudice.'
     (*Odorizzi v. Bloomfield School Dist.* (1966) 246 Cal.App.2d 123, 129, 54 Cal.Rptr. 533,
27       italics added.) Actual reliance and causation of injury must be shown. (5 Witkin, Cal.
     Procedure (3d ed. 1985) Pleading, § 666, pp. 116–117, citing *County of San Diego v. Utt*
28       (1916) 173 Cal. 554, 560, 160 P. 657.)
         *Tyler v. Children's Home Society* (1994) 29 Cal.App.4th 511, 548

1    Here, there is no allegation of any such confidential relationship.  As shown above, none

2    arises out of the "deed of trust" as alleged by Plaintiffs.  Furthermore, it has long been held that

3    the relationship between a lender and borrower is not fiduciary in nature.

> "It has long been regarded as 'axiomatic that the relationship between a bank and its depositor arising out of a general deposit is that of a debtor and creditor.' (Morse v. Crocker National Bank (1983) 142 Cal.App.3d 228, 232, 190 Cal.Rptr. 839.)  'A debt is not a trust and there is not a fiduciary relation between debtor and creditor as such.' (Downey v. Humphreys (1951) 102 Cal.App.2d 323, 332, 227 P.2d 484.)  The same principle should apply with even greater clarity to the relationship between a bank and its loan customers."
> *Price v. Wells Fargo Bank* (1989) 213 Cal.App.3d 465, 476.

9    In light of the foregoing, and considering that this second claim is also  a species of fraud

10   which must satisfy FRCP 9(b), this claim is insufficient both procedurally and substantively, and

11   should be dismissed.

12   <u>3.  Third Claim for Fraudulent Conversion of Real Property Fails to State a Claim for</u>

13   <u>Which Relief can be Granted – FRCP 12(b)(6).</u>

14   A claim for "conversion" of the Property is not well taken as conversion, by definition, is

15   the improper taking of *personal property*.

> "Conversion is generally described as the wrongful exercise of dominion over the personal property of another. (*Gruber v. Pacific States Sav. & Loan Co.* (1939) 13 Cal.2d 144, 148, 88 P.2d 137.) The basic elements of the tort are (1) the plaintiff's ownership or right to possession of personal property; (2) the defendant's disposition of the property in a manner that is inconsistent with the plaintiff's property rights; and (3) resulting damages. (*Burlesci v. Petersen* (1998) 68 Cal.App.4th 1062, 1066, 80 Cal.Rptr.2d 704.)"
> *Fremont Indemnity Co. v. Fremont General Corporation* (2007)  148 Cal.App.4th 97, 119.

21   Of course, the property at issue here is real property, so the claim may not lie.

22   Furthermore, there is no allegation that any property – real or personal – has been taken.

23   Rather, the allegation is simply that the note and deed of trust were drafted, and not executed, by

24   Wells Fargo. [FAC, ¶29].

25   Absent any allegation that there is personal property at issue, or that any property has

26   been taken, the claim is not well taken and should be dismissed.

27   / / /

28   / / /

1       <u>4. Fourth Claim for Violation of the Federal Fair Debt Collection Practice Act Fails to</u>

2       <u>State a Claim for Which Relief can be Granted – FRCP 12(b)(6).</u>

3       As their final claim, Plaintiffs assert that Wells Fargo is a "debt collector" under the

4 Federal Fair Debt Collection Practices Act ("FDCPA") [FAC, ¶31].

5       An analysis of the FDCPA, however, reveals that *creditors collecting their own debts –*

6 such as Wells Fargo collecting its own debt from Plaintiffs here – are not subject to its terms.

7 *Doran v. Aus* (9th Cir. - 2009) 308 Fed.Appx. 49, 51, citing 15 U.S.C. §1692a(6)[5].

8       Further to the proposition that Wells Fargo, the originator of the loan, is not liable under

9 the FDCPA, consider the ruling in *Distor v. U.S. Bank NA* (N.D. Cal – 2009) 2009 WL 3429700,

10 5:

11       "Defendant GreenPoint is correct that it cannot be a debt collector under the FDCPA,
because GreenPoint is the originator of the loan, and is simply attempting to collect its
12       own debt. Defendant GMAC is also correct in that as a loan servicer it is also not a 'debt
collector' within the meaning of the FDCPA. 'The legislative history of section 1692a(6)
13       indicates conclusively that a debt collector does not include the consumer's creditors, a
mortgage servicing company, or an assignee of a debt, as long as the debt was not in
14       default at the time it was assigned.' *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5[th]
Cir.1985). Defendant GMAC was the loan servicer before the mortgage went into default,
15       and the FDCPA excludes persons attempting to collect a debt that was not in default at
the time it was obtained. See 15 U.S.C. § 1692a(6)(F)(iii)."

16

17       Accordingly, as Wells is not a "debt collector" under the FDCPA, this claim is not well

18 taken and must be dismissed[6].

19 ///

20 ///

21 ///

22

23

24

---

25     [5]15 U.S.C. §1692a(6) provides in pertinent part:

26     "The term 'debt collector' means any person who uses any instrumentality of interstate commerce or the
mails in any business the principal purpose of which is the collection of any debts, or who regularly collects
27     or attempts to collect, directly or indirectly, *debts owed or due or asserted to be owed or <u>due another</u>*. . ."
[Emphasis added.]

28     [6]To the extent that this final claim may be seen as a one to quiet title based upon the allegations of
paragraph 34, it is not well taken as, among other shortcomings, there is no allegation that Plaintiffs have "done
equity" by tendering the full balance secured by the deed of trust to Wells Fargo. *Miller v. Provost* (1994) 26
Cal.App.4th 1703, 1707.

## IV. CONCLUSION

For the reasons set forth above, it is respectfully requested that the Court dismiss each of the claims asserted in the FAC against Wells Fargo.

DAWE & CHRISTOPHERSON LLP

Dated: June 13, 2011

Dean A. Christopherson
Counsel for Defendant Wells Fargo Bank, N.A.

## DECLARATION RE PRE-FILING CONFERENCE [LOCAL RULE 7-3]

I, Dean A. Christopherson, declare as follows:

1.      I am an attorney licensed to practice law in the State of California and before this Court, and am a principal in the firm of Dawe & Christopherson LLP, counsel for Wells Fargo Bank herein. If called to testify as to the matters of fact set forth herein, I could and would competently testify thereto as all such matters are personally known by me to be true.

2.      As Plaintiffs in this action appear *pro se*, the obligation to conduct a conference regarding the merits of this motion prior to filing, otherwise required by Local Rule 7-3, is excused by Local Rule 16-12)c). [Local Rule 7-3 incorporations those exemptions which appear Local Rule 16-12].

I declare under penalty of perjury under the law of the United States of America that the foregoing is true and correct. Executed on June 13, 2011 at Walnut Creek, CA.

Dean A. Christopherson

## REQUEST FOR JUDICIAL NOTICE

As allowed by Federal Rule of Evidence 201, Wells Fargo requests that the Court take judicial notice of the documents described below and attached hereto.

| Description of Document | Exhibit No. |
|---|---|
| Deed of Trust | 1 |
| Substitution of Trustee | 2 |
| Notice of Default and Election to Sell Under Deed of Trust | 3 |
| Notice of Trustee's Sale | 4 |

DAWE & CHRISTOPHERSON LLP

Dated: June 13, 2011

Dean A. Christopherson
Counsel for Defendant Wells Fargo Bank, N.A.

RECORDING REQUESTED BY
LAND AMERICA LAWYERS TITLE

04001912

**2006-0098213**

Recording Requested By:
WELLS FARGO BANK, N.A.

| | | |
|---|---|---|
| Recorded | REC FEE | 67.00 |
| Official Records | | |
| County of | COPIES | 1.00 |
| Santa Barbara | | |
| Joseph E. Holland | | |
| | CD | |
| 08:00AM 19-Dec-2006 | Page 1 of 21 | |

Return To:
WFHM FINAL DOCS X9999-01M

1000 BLUE GENTIAN ROAD
EAGAN, MN 55121
Prepared By:
WELLS FARGO BANK, N.A.

1595 SPRUCE ST,, RIVERSIDE, CA
925060000

———————[Space Above This Line For Recording Data]———————

# DEED OF TRUST

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

(A) "Security Instrument" means this document, which is dated DECEMBER 15, 2006 ,
together with all Riders to this document.
(B) "Borrower" is JENNIFER MCCANDLESS AND DINESH PERERA, WIFE AND HUSBAND

Borrower's address is 67 ALAMEDA PADRE SERRA
SANTA BARBARA          CA 93103          . Borrower is the trustor under this Security Instrument.
(C) "Lender" is WELLS FARGO BANK, N.A.

Lender is a NATIONAL ASSOCIATION
organized and existing under the laws of THE UNITED STATES
0071652697

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3005 1/01
VMP ®  -6(CA) (0207).01
Page 1 of 15          Initials:
NMFL #3005 (CACD) Rev 8/21/2006
VMP Mortgage Solutions, Inc.



**Exhibit 1**
**Page 1 of 21**

Lender's address is **P.O. BOX 17339, BALTIMORE, MD   212971339**

Lender is the beneficiary under this Security Instrument.

**(D) "Trustee"** is **FIDELITY NATIONAL TITLE INS CO
17911 VON KARMAN, SUITE 200, IRVINE, CA   92614**

**(E) "Note"** means the promissory note signed by Borrower and dated
The Note states that Borrower owes Lender **SEVEN HUNDRED EIGHTY THREE THOUSAND TWO
HUNDRED AND 00/100**                                                                      Dollars
(U.S. $****783,200.00        ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than **JANUARY 01, 2037**.

**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the
Property."

**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.

**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

[x] Adjustable Rate Rider   [ ] Condominium Rider                [ ] Second Home Rider
[ ] Balloon Rider           [ ] Planned Unit Development Rider   [ ] 1-4 Family Rider
[ ] VA Rider                [ ] Biweekly Payment Rider           [ ] Other(s) [specify]

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.

**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.

**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.

**(L) "Escrow Items"** means those items that are described in Section 3.

**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.

**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on,
the Loan.

**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used
in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard

**Exhibit 1
Page 2 of 21**

Description: Santa Barbara,CA Document-Year.DocID 2006.98213 Page: 2 of 21
Order: 36 Comment:

to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
COUNTY                                              of SANTA BARBARA                                   :
    [Type of Recording Jurisdiction]                                  [Name of Recording Jurisdiction]
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF.

*SEE ADJUSTABLE RATE RIDER
THIS IS A PURCHASE MONEY SECURITY INSTRUMENT.

Parcel ID Number: 015-152-02                        which currently has the address of
67 ALAMEDA PADRE SERRA                                                                    [Street]
SANTA BARBARA                              [City], California 93103            [Zip Code]
("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

    UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

    **1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S.

VMP® -6(CA) (0207).01                        Page 3 of 15                    Initials: [signature]            Form 3005  1/01

**Exhibit 1**
**Page 3 of 21**

currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

**Exhibit 1**
**Page 4 of 21**

Description: Santa Barbara,CA Document-Year.DocID 2006.98213 Page: 4 of 21
Order: 36 Comment:

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

**Exhibit 1**
**Page 5 of 21**

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

Initials: _JM_

**Exhibit 1**
**Page 6 of 21**

Description: Santa Barbara,CA Document-Year.DocID 2006.98213 Page: 6 of 21
Order: 36 Comment:

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

**Exhibit 1**
**Page 7 of 21**

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

Initials: _____

**Exhibit 1**
**Page 8 of 21**

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

Initials: _____

VMP -6(CA) (0207).01                     Page 9 of 15                     Form 3005   1/01

**Exhibit 1**
**Page 9 of 21**

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

Initials:

**Exhibit 1**
**Page 10 of 21**

Description: Santa Barbara,CA Document-Year.DocID 2006.98213 Page: 10 of 21
Order: 36 Comment:

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

Initials: _____

-6(CA) (0207).01      Page 11 of 15      Form 3005   1/01

**Exhibit 1**
**Page 11 of 21**

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

Initials

-6(CA) (0207).01          Page 12 of 15          Form 3005   1/01

**Exhibit 1**
**Page 12 of 21**

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

Initials: _____

**Exhibit 1**
**Page 13 of 21**

   BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          _____ (Seal)
                                                      JENNIFER MCCANDLESS              -Borrower


_____          _____ (Seal)
                                                      DINESH PERERA                   -Borrower


_____ (Seal)            _____ (Seal)
                         -Borrower                                      -Borrower


_____ (Seal)            _____ (Seal)
                         -Borrower                                      -Borrower


_____ (Seal)            _____ (Seal)
                         -Borrower                                      -Borrower

**Exhibit 1**
**Page 14 of 21**

State of California
County of *Santa Barbara*

On *12·18·06* before me, *Susan N. Lowe* } ss. *a notary public* personally appeared

**JENNIFER MCCANDLESS AND DINESH PERERA**

, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____ (Seal)



SUSAN N. LOWE
Comm. # 1561616
NOTARY PUBLIC-CALIFORNIA
County of Santa Barbara
My Comm. expires April 17, 2009

Initials: _____ _____

-6(CA) (0207).01        Page 15 of 15        Form 3005   1/01

**Exhibit 1
Page 15 of 21**

**This is the last page for the closing package related to**

**loan number 0071652697.**

**Exhibit 1**
**Page 16 of 21**

**Exhibit A**

All that certain real property situated in the County of Santa Barbara, State of California, described as follows:

That portion of Pueblo Lot No. 74 of the Outside Pueblo Lands of the City of Santa, in the City of Santa Barbara, Barbara, County of Santa Barbara, State of California, described as follows:

Beginning at a cross cut on the pavement in the center line of Alameda Padre Serra, set by George A. Miller, Registered Engineer #1122, from which a ¾ inch survey pipe set on the Southeasterly line of said road bears South 24°55' East, 30.23 feet distant, said point of beginning being the Northwesterly corner of the tract of land described in the deed from Frank M. Gallaher to Frederick H. Cowles, et al., filed November 20, 1935 in the office of the Registrar of Titles as Torrens Document No. 1231, and a duplicate thereof recorded November 20, 1935 in Book 343, Page 241 of Official Records, records of said County;

thence along the center line of said Alameda Padre Serra, South 57°59' West, 87.51 feet, more or less, to the most Westerly corner of the tract of land described in the deed to Roy R. Kennedy, et ux., filed September 23, 1947 in the office of the Registrar of Titles as Torrens Document No. 2209, and a duplicate thereof recorded September 23, 1947 in Book 744, Page 450 of Official Records, records of said County, said point being the true point of beginning of the property herein described;

thence continuing along the center line of Alameda Padre Serra, South 57°59' West, 84.07 feet, more or less, to the most Northerly corner of the tract of land described in the deed to Samuel Gerson, et ux., registered August 2, 1948 in the office of the said Registrar of Titles as Torrens Document No. 2406, a duplicate thereof recorded August 2, 1948 in Book 798, Page 35 of Official Records, records of said County;

thence along the Northeasterly line of said Gerson Tract of land, South 29°01' East, 208.69 feet to the most Easterly corner of said Gerson Tract of land, said point being a point in the Southeasterly line of the tract of land described in the deed to John Bjornen, et ux., registered October 8, 1945 in the office of the said Registrar of Titles as Torrens Document No. 1890 and a duplicate thereof recorded October 8, 1945 in Book 668, Page 148 of Official Records, records of said County;

thence along the Southeasterly line of said Bjornen Tract of land, North 57°59' East, 72.55 feet to the most Southerly corner of said Kennedy Tract of land above referred to;

thence along the Southwesterly line of said Kennedy Tract of land, North 25°52' West, 209.61 feet to the true point of beginning.

Excepting therefrom that portion conveyed to the City of Santa Barbara by deed recorded December 20, 1921 as Instrument No. 7082 in Book 202, Page 189 of Deeds.

Said land is shown with other lands on a map of survey filed in Book 29, Page 34 of Record of Surveys, in the office of the County Recorder of said County.

**Exhibit 1**
**Page 17 of 21**

# INITIAL INTEREST<sup>SM</sup> ADJUSTABLE RATE RIDER
### (1-Year Treasury Index - Rate Caps)
### (Assumable after Initial Period)

THIS INITIAL INTEREST ADJUSTABLE RATE RIDER is made this 15           day of
DECEMBER 2006    , and is incorporated into and shall be deemed to amend and supplement
the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date
given by the undersigned (the "Borrower") to secure the Borrower's Initial Interest Adjustable
Rate Note (the "Note") to WELLS FARGO BANK, N.A.

(the "Lender") of the same date and covering the property described in the Security
Instrument and located at:
67 ALAMEDA PADRE SERRA, SANTA BARBARA, CA  93103

[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE
INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE
AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE
TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the
Security Instrument, Borrower and Lender further covenant and agree as follows:

A. INTEREST RATE AND MONTHLY PAYMENT CHANGES

The Note provides for an initial interest rate of           6.125%. The Note provides
for interest only payments until the first fully amortizing principal and interest payment due
date (the "First P&I Payment Due Date"), which is the first day of FEBRUARY, 2017        .
The Note provides for changes in the interest rate and the monthly payments as follows:

4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

(A) Interest Change Dates

The interest rate I will pay may change on the first day of JANUARY, 2017           ,
and may change on that day every 12th month thereafter. Each date on which my interest
rate could change is called an "Interest Change Date."

(B) The Index

Beginning with the first Interest Change Date, my interest rate will be based on an Index.
The "Index" is the weekly average yield on United States Treasury securities adjusted to a
constant maturity of one year, as made available by the Federal Reserve Board. The most
recent Index figure available as of the date 45 days before each Interest Change Date is called
the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is
0071652697

MULTISTATE INITIAL INTEREST ADJUSTABLE RATE RIDER - 1-Year Treasury Index
(Assumable after Initial Period) - Single Family - Freddie Mac UNIFORM INSTRUMENT
NMFL #8361 (FM5R) Rev 5/12/2006

-191R (0508) Form 5107 7/05
Page 1 of 4       Initials: _____
VMP Mortgage Solutions, Inc.     (800)521-7291

# Exhibit 1
# Page 18 of 21

based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Interest Change Date, the Note Holder will calculate my new interest rate by adding **TWO AND THREE-QUARTERS** percentage point(s) (            **2.750** %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Interest Change Date.

The Note Holder will then determine the amount of my monthly payment. For payment adjustments occurring before the First P&I Payment Due Date, my monthly payment will be the amount sufficient to repay all accrued interest each month on the unpaid principal balance at the new interest rate. For payment adjustments occurring on or after the First P&I Payment Due Date, my monthly payment will be an amount sufficient to repay the unpaid principal that I am expected to owe at the Interest Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Interest Change Date will not be greater than            **11.125** % or less than            **2.750** %. Thereafter, my interest rate will never be increased or decreased on any single Interest Change Date by more than **TWO** percentage point(s) (           **2.000** %) from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than            **11.125** %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Interest Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Interest Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

**1. UNTIL BORROWER'S INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION A ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL BE IN EFFECT AS FOLLOWS:**

**Transfer of the Property or a Beneficial Interest In Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

Initials:

-191R (0508)                     Page 2 of 4                     Form 5107 7/05

**Exhibit 1**
**Page 19 of 21**

Description: Santa Barbara,CA Document-Year.DocID 2006.98213 Page: 19 of 21
Order: 36 Comment:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**2. AFTER BORROWER'S INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION A ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT DESCRIBED IN SECTION B1 ABOVE SHALL THEN CEASE TO BE IN EFFECT, AND THE PROVISIONS OF UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL BE AMENDED TO READ AS FOLLOWS:**

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within

Initials: _____

-191R (0508)                   Page 3 of 4                   Form 5107 7/05

**Exhibit 1**
**Page 20 of 21**

Description: Santa Barbara,CA Document-Year.DocID 2006.98213 Page: 20 of 21
Order: 36 Comment:

which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)
JENNIFER MCCANDLESS          -Borrower

_____ (Seal)
DINESH PERERA                -Borrower

_____ (Seal)
                             -Borrower

_____ (Seal)
                             -Borrower

_____ (Seal)
                             -Borrower

_____ (Seal)
                             -Borrower

_____ (Seal)
                             -Borrower

_____ (Seal)
                             -Borrower

<table>
<tr><td>(VMP)®-191R (0508)</td><td>Page 4 of 4</td><td>Form 5107 7/05</td></tr>
</table>

**Exhibit 1**
**Page 21 of 21**

2010-0045319

| | Recorded | REC FEE | 21.00 |
| | Official Records | | |
| | County of | | |
| | Santa Barbara | | |
| | Joseph E. Holland | | |
| | | | |
| | | | MA |
| 08:01AM 23-Aug-2010 | | Page 1 of 2 |

Recording Requested By:
**First American Title Insurance Company**

*PT.*

When Recorded Mail To:
**First American Trustee Servicing Solutions, LLC** *2*
**6 Campus Circle, 2nd Floor**
**Westlake, TX 76262**

---

TS No. : **CA1000209137**
TSG No. : **4521021**

### SUBSTITUTION OF TRUSTEE

WHEREAS,

**JENNIFER MCCANDLESS AND DINESH PERERA, WIFE AND HUSBAND**

was the original Trustor, **FIDELITY NATIONAL TITLE INS CO** was the original Trustee, and **WELLS FARGO BANK, N.A.** was the original Beneficiary under that certain Deed of Trust Dated **12/15/2006** and recorded on **12/19/2006** as Instrument No. **2006-0098213** in Book , Page , of Official Records of **Santa Barbara** County, California; and

WHEREAS, the undersigned is the present Beneficiary under said Deed of Trust, and

WHEREAS, the undersigned desires to substitute a new Trustee under said Deed of Trust in place and instead of said original Trustee, or Successor Trustee, thereunder, in the manner in said Deed of Trust provided;

NOW, THEREFORE, the undersigned hereby substitute, **First American Trustee Servicing Solutions, LLC** whose address is: 6 Campus Circle, 2nd Floor, Westlake, WestlakeTX 76262, as Trustee under said Deed of Trust.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

## Exhibit 2
## Page 1 of 2

SUBSTITUTION OF TRUSTEE

Date : **8/19/10**

Wells Fargo Bank, NA **\*\*\***
By First American Trustee Servicing Solutions, LLC
Formerly First American LoanStar Trustee Services, LLC
Its Attorney in Fact



Robert Bourne,  Certifying Officer

State of Texas           )
County of Tarrant   )

Before me  Adriana Morales , a Notary Public, on this day personally appeared Robert Bourne, Certifying Officer, known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that this person executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office  this  day of  **8/9/10**
WITNESS my hand and official seal

Signature

```
ADRIANA MORALES
Notary Public, State of Texas
My Commission Expires
March 07, 2012
```

**\*\*\***  a) Wells Fargo Bank, NA, successor by merger to  Wells Fargo Home Mortgage, Inc

b) Wells Fargo Bank, NA, successor by merger to Wells Fargo Home Mortgage Inc, successor by merger to Crossland Mortgage Corporation.

c) Wells Fargo Bank, NA successor by merger to Wells Fargo Home Mortgage, Inc, formerly known as Norwest Mortgage, Inc, formerly known as Director's Mortgage Loan Corporation

d) Wells Fargo Bank, NA, successor by merger to Wachovia Bank, NA

e) Wells Fargo Bank, NA, successor by merger to Wachovia Bank of Delaware, NA

f) Wells Fargo Bank, NA, successor by merger to Washington Mutual Bank, successor by merger to Washington Mutual Home Loans, successor by merger with HomeSide Lending, successor by merger with Bancboston Mortgage

g) Wells Fargo Bank, NA, successor by merger to Washington Mutual Bank, successor by merger to Washington Mutual Home Loans, successor by merger with Fleet Mortgage

h) Wells Fargo Bank, NA successor by merger to Wachovia Mortgage FSB

# Exhibit 2
# Page 2 of 2

2010-0045956

Recording Requested By:

Recording Requested By:
**First American Title Insurance Company**

|  | Recorded Official Records County of Santa Barbara Joseph E. Holland | REC FEE | 24.00 |
|---|---|---|---|
|  | 08:01AM 25-Aug-2010 | MA Page 1 of 3 | |

When Recorded Mail To:
**First American Trustee Servicing Solutions, LLC**
**6 Campus Circle, 2nd Floor**
**Westlake, TX 76262**

Space above this line for Recorder's use only

TS No. :        CA1000209137
APN:           015-152-02
TSG No. :     4521021

**Pursuant to California Code Section 2924c(b)(1) please be advised of the following:**

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

### IMPORTANT NOTICE

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may have the legal right to bring your account into good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five days business days prior to the date set for the sale of your property. No sale date may be set until three months from the date this Notice of Default may be recorded (which date of recordation appears on this notice).

This amount is **$22,910.04** as of **08/23/2010**, and will increase until your account becomes current. While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the three month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2);

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

**Wells Fargo Bank, NA**
**c/o First American Trustee Servicing Solutions, LLC**
**6 Campus Circle, 2nd Floor**
**Westlake, TX 76262**

# Exhibit 3
# Page 1 of 3

TS No.:      CA1000209137
VA/FHA/PMI No.:

# NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.

**Remember, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.**

NOTICE IS HEREBY GIVEN: That **First American Trustee Servicing Solutions, LLC** As Agent for the current beneficiary under a Deed of Trust dated **12/15/2006**, executed by:

**JENNIFER MCCANDLESS AND DINESH PERERA, WIFE AND HUSBAND,**

as Trustor(s) to secure certain obligations in favor of **WELLS FARGO BANK, N.A.** as Beneficiary, recorded **12/19/2006**, (as Instrument No.) **2006-0098213**, (in Book) , (Page)  of Official Records in the Office of the Recorder of **Santa Barbara** County, California describing land therein as:

## AS MORE FULLY DESCRIBED IN THE ABOVE MENTIONED DEED OF TRUST

said obligations including ONE NOTE FOR THE ORIGINAL sum of **$783,200.00**.

That a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of:

**THE INSTALLMENT OF PRINCIPAL AND INTEREST WHICH BECAME DUE ON 4/1/2010 AND ALL SUBSEQUENT INSTALLMENTS, TOGETHER WITH LATE CHARGES AS SET FORTH IN SAID NOTE AND DEED OF TRUST, ADVANCES, ASSESSMENTS, FEES, AND/OR TRUSTEE FEES. NOTHING IN THIS NOTICE SHALL BE CONSTRUED AS A WAIVER OF ANY FEES OWING TO THE BENEFICIARY UNDER THE DEED OF TRUST, PURSUANT TO THE TERMS OF THE LOAN DOCUMENTS.**

That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said agent, a written Declaration of Default and Demand for same, and has deposited with said agent such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

Dated: Aug 23, 2010

**First American Trustee Servicing Solutions, LLC As Agent
For The Current Beneficiary**
By: First American Title Insurance Company, as
Agent

By: _____

Name: __**JOE BUENO**_____ (signature)

Title:_____

**First American Trustee Servicing Solutions, LLC MAY BE ACTING AS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED MAY BE USED FOR THAT PURPOSE.**

**See Attached Declaration**

**Exhibit 3
Page 2 of 3**

# NOTICE OF DEFAULT DECLARATION
## PURSUANT TO CALIFORNIA CIVIL CODE 2923.5

Wells Fargo Home Mortgage
3476 Stateview Blvd.
Fort Mill, SC 29715

Borrower: JENNIFER MCCANDLESS
Property Address:  67 ALAMEDA PADRE SERRA
                   SANTA BARBARA    CA    93103

The undersigned mortgagee, beneficiary, or their authorized agent (collectively, the "Beneficiary") represent and declares that the requirements of CA Civil Code 2923.5 have been met.  This Declaration is required for any residential owner occupied property in which the loan was originated between January 1, 2003 and December 31, 2007.  Non-owner occupied property and vacant property are exempt from the requirements of CA Civil Code 2923.5.

One of the below necessary requirements was met by the Beneficiary:

* The Beneficiary has made contact with the borrower pursuant to CA Civil Code 2923(a)(2).  Contact with the borrower was made in person or by telephone to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure.

* Due Diligence to contact the borrower was exercised pursuant to CA Civil Code 2923.5(g)(2) by the Beneficiary.

* The borrower has surrendered the property as evidenced by either a letter confirming the surrender or delivery of the keys to the property to the mortgagee, Trustee, beneficiary, or authorized agent pursuant to CA Civil Code 2923.5(h)(1).

* The borrower has contracted with an organization, person, or entity whose primary business is advising people who have decided to leave their homes on how to extend the foreclosure process and avoid their contractual obligations to mortgagees or beneficiaries pursuant to CA Civil Code 2923.5(h)(2).

* The borrower has filed for bankruptcy and the proceedings have not been finalized pursuant to CA Civil Code 2923.5(h)(3).

I certify (or declare) under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated:  08/20/2010

Wells Fargo Home Mortgage

China Brown

VP of Loan Documentation

**Exhibit 3**
**Page 3 of 3**

2010-0068398

Recording Requested By:
**First American Title Insurance Company**

|                     |          |
| Recorded            | REC FEE    21.00 |
| Official Records    |          |
| County of           |          |
| Santa Barbara       |          |
| Joseph E. Holland   |          |

08:01AM 01-Dec-2010 | MA  Page 1 of 2

When Recorded Mail To:
**First American Trustee Servicing Solutions, LLC**
**6 Campus Circle, 2nd Floor**
**Westlake, TX 76262**
**8664295179**

| | |
|---|---|
| TSG No.: | 4521021 |
| TS No.: | CA1000209137 |
| FHA/VA/PMI No.: | |
| APN: | 015-152-02 |

Space above this line for Recorder's use only

## NOTICE OF TRUSTEE'S SALE

YOU ARE IN DEFAULT UNDER A DEED OF TRUST, DATED **12/15/2006.** UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.

On **12/20/2010** at **01:00 P.M.**, **First American Trustee Servicing Solutions, LLC**, as duly appointed Trustee under and pursuant to Deed of Trust recorded **12/19/2006**, as Instrument No. **2006-0098213**, in book , page , of Official Records in the office of the County Recorder of **Santa Barbara** County, State of **California**. Executed by:

**JENNIFER MCCANDLESS AND DINESH PERERA, WIFE AND HUSBAND,**

WILL SELL AT PUBLIC AUCTION TO HIGHEST BIDDER FOR CASH, CASHIER'S CHECK/CASH EQUIVALENT or other form of payment authorized by 2924h(b), (Payable at time of sale in lawful money of the United States) **At the main entrance to the County Courthouse, 1100 Anacapa Street, Santa Barbara, CA.**

All right, title and interest conveyed to and now held by it under said Deed of Trust in the property situated in said County and State described as: AS MORE FULLY DESCRIBED IN THE ABOVE MENTIONED DEED OF TRUST APN# 015-152-02

The street address and other common designation, if any, of the real property described above is purported to be:

**67 ALAMEDA PADRE SERRA, SANTA BARBARA, CA 93103**

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein. Said sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by said Deed of Trust, with interest thereon, as provided in said note(s), advances, under the terms of said Deed of Trust, fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust. The total amount of the unpaid balance of the obligation secured by the property to be sold and reasonable estimated costs, expenses and advances at the time of the initial publication of the Notice of Sale is **$823,551.43.** The beneficiary under said Deed of Trust heretofore executed and delivered to the undersigned a written Declaration of Default and Demand for Sale, and a written Notice of Default and Election to Sell. The undersigned caused said Notice of Default and Election to Sell to be recorded in the County where the real property is located.

**First American Title Insurance Company**
**First American Trustee Servicing Solutions, LLC**
**3 FIRST AMERICAN WAY**
**SANTA ANA, CA 92707**

Date: **11/26/2010**

WENDY RANDALL——FOR TRUSTEE'S SALE INFORMATION
PLEASE CALL (916)939-0772

**First American Trustee Servicing Solutions, LLC**
**MAY BE ACTING AS A DEBT COLLECTOR
ATTEMPTING TO COLLECT A DEBT. ANY
INFORMATION OBTAINED MAY BE USED
FOR THAT PURPOSE.**

# Exhibit 4
# Page 1 of 2

# <u>CALIFORNIA DECLARATION</u>

I, <u>Marsha Graham</u> of Wells Fargo Home Mortgage, Inc., declare under penalty of perjury, under the laws of the State of California, that the following is true and correct.

The Mortgage Loan Servicer has obtained from the Commissioner of Corporations a final or temporary order of exemption pursuant to California Civil Code Section 2923.53 that is current and valid on the date the accompanying Notice of Sale is filed.

And

The timeframe for giving Notice of Sale specified in subdivision (a) of Civil Code Section 2923.52 does not apply.

Dated: <u>6-17-09</u>

By: <u>Marsha Graham</u>

Title: <u>Assistant Vice President</u>

Name: <u>Marsha Graham</u>

**Exhibit 4**
**Page 2 of 2**